■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT J. WILKINS, Appellant. — Appeal from a judgment of the County Court of Chenango County (Ingraham, J.), rendered December 27, 1982, upon a verdict

convicting defendant of the crime of manslaughter in the first degree. ¶ Defendant was indicted for murder in the second degree and manslaughter in the first degree resulting from the death of 16-year-old Gloria J. Diamond on May 16, 1982. The evidence at the trial established that defendant and Diamond cohabited for approximately seven months when, after a dispute, Diamond moved back to her parents' home. There followed a period of estrangement, during which Diamond dated another man. On May 16, 1982 at approximately 8:00 P.M., Diamond returned to defendant's apartment where, during the course of an argument, she was fatally strangled. Defendant testified that during this argument, Diamond slit his left wrist with a knife and, when he tried to disarm her, she stabbed him in the stomach with a second knife. He then tried to push her away by placing his hand on her neck. From that point forward, defendant claimed no recollection of the ensuing events. A medical examiner testified that Diamond's death resulted from strangulation. It was also revealed that after the altercation with Diamond, defendant made several attempts to commit suicide: he drank some ammonia; drove his truck at an excessive speed into a concrete viaduct; and, finally, jumped in front of a passing vehicle and was injured. While being treated by an emergency medical squad, defendant requested to speak with Joseph Peptis, an off-duty New York State trooper. At this point, defendant twice stated "I just killed my girlfriend", and identified her by name and location. Defendant made further incriminatory statements after being taken to Chenango Memorial Hospital. A jury convicted defendant of manslaughter in the first degree and he was sentenced to a term of 8⅓ to 25 years' imprisonment. This appeal ensued. ¶ Defendant's first argument for reversal is that the testimony of Dr. K. C. Sharma, a licensed clinical psychologist called by the prosecution in rebuttal, violated his psychologist-client privilege (CPLR 4507). Dr. Sharma described having been called to interview defendant at the hospital to determine whether he was suicidal, during which defendant stated that the stab wounds he had received were self-inflicted. Assuming, *arguendo*, that the privilege applied to what defendant said regarding the source of his wounds during the psychologist's evaluation of his mental condition, we nevertheless find no error in the introduction of his statement in evidence. Defendant placed those wounds and their cause in issue by his own testimony, in support of his defense of justification, that they were inflicted on him by the deceased victim. He also elicited testimony on the same issue from an earlier defense witness suggesting that the wounds could not have been self-inflicted because of defendant's phobia against being hurt or being cut. Having voluntarily elected to reveal his wounds and their cause, defendant was not in a position to prevent testimonial disclosure by the psychologist of information concerning those wounds, even though acquired while the psychologist was acting in a professional capacity, any more than if the disclosure he sought to prevent was his statement to the physician who had treated his wounds. The psychologist-client privilege is no broader than the doctor-patient privilege (*State of Florida v Axelson*, 80 Misc 2d 419, 420). The principles under which confidentiality is deemed to be waived are equally applicable to both privileges. The overriding, and here controlling, principle of waiver is that a litigant may not use the privilege as "both a sword and a shield" (*Capron v Douglass*, 193 NY 11, 17). By this is meant that "[a] party should not be permitted to assert a * * * physical condition in seeking * * * to absolve himself from liability and at the same time assert the privilege in order to prevent the other party from ascertaining the truth of the claim" (*Koump v Smith*, 25 NY2d 287, 294; see, also, *People v Al-Kanani*, 33 NY2d 260, 264-265, cert den 417 US 916). ¶ The fact that defendant did not place his *mental condition* in issue by asserting an insanity defense is not controlling. The psychologist was not called to testify on

defendant's mental condition. He was only called to testify concerning defendant's admissions on the cause of his wounds, which were inconsistent with defendant's version of their cause at the trial. A privilege may be waived for some purposes, if not for all purposes (*Perry v Fiumano,* 61 AD2d 512, 516). Defendant had the right, in the first instance, to keep secret what he had revealed to the psychologist concerning the circumstances which gave rise to his wounds. Once, however, he chose to reveal publicly his version of how those injuries were incurred, the secret which the privilege was designed to protect was already out. Thereafter, at least as to the nature and cause of his wounds, preventing further disclosure would no longer have served the statutory purpose, and " 'would simply be an obstruction to public justice' " (*People v Al-Kanani, supra,* p 265, quoting *People v Bloom,* 193 NY 1, 10). ¶ The only other point raised by defendant requiring extended discussion deals with the admissibility of a statement made by him to two State Police investigators after he was admitted to the hospital, in which he again indicated that his wounds were self-inflicted. The statement had been preceded by two earlier statements to Trooper Peptis; the first, already described, while receiving emergency aid at the scene where he was struck by the automobile, the second after being taken to the hospital emergency room. Peptis indicated that following the second statement, defendant invoked his right to counsel. Therefore, the succeeding statement made to other police officers, in the absence of counsel, should have been suppressed (*People v Cunningham,* 49 NY2d 203). Under the circumstances of this case, however, the error was harmless. Defendant had already fully incriminated himself by his earlier admissions. Moreover, the statement in question was only cumulative of what defendant had told Dr. Sharma concerning the source of the stab wounds. These statements were further supported by medical evidence that (1) the victim was strangled from behind; (2) strangulation could have lasted for as long as eight minutes, at least four minutes past when a victim could have remained conscious; and (3) defendant's wounds were "hesitation" wounds, i.e., of the type that are self-inflicted by someone lacking the actual will to end his life. In light of this wall of properly admitted evidence totally repugnant to any legal justification based on self-defense, there is not the remotest possibility that the erroneous admission of the challenged statement affected the jury's verdict. The failure to suppress that statement was, therefore, harmless error beyond a reasonable doubt (*People v Sanders,* 56 NY2d 51, 66-67). ¶ We have examined defendant's remaining assignments of error and find them equally unpersuasive. His conviction should, therefore, be affirmed in all respects. ¶ Judgment affirmed. Kane, Casey and Levine, JJ., concur.

Mahoney, P. J., and Weiss, J., dissent and vote to reverse in the following memorandum by Weiss, J. Weiss, J. (dissenting). We respectfully dissent. In our view, the introduction of Dr. K. C. Sharma's testimony on rebuttal violated defendant's psychologist-client privilege (CPLR 4507). Since Dr. Sharma conceded that the purpose of his examination was to determine if defendant was suicidal and that the conversation was confidential, the challenged statements were clearly within the scope of this privilege. The issue, then, is whether a waiver occurred. The psychologist-client privilege is waived when the client affirmatively puts his mental condition in controversy. In the context of a criminal proceeding, such waiver generally occurs when the defendant propounds a defense of insanity (see *People v Edney,* 39 NY2d 620; *People v Al-Kanani,* 33 NY2d 260, 264, cert den 417 US 916). Here, the defense is based on justification, not insanity. We recognize that defendant called a witness whose testimony was that defendant was unable to injure himself, a posture supportive of his contention of self-defense. It might be argued, as the majority suggests, that by producing this witness, defendant placed his mental condi-

tion into issue vis-à-vis his wounds. It is difficult to perceive, however, how such testimony rises to the equivalent of an insanity defense where a defendant affirmatively places his mental condition in controversy. ¶ Even in the event of a waiver, however, the psychologist's testimony on the issue of guilt would be impermissible. A waiver of the privilege only permits the psychologist to testify to those facts which formulate the basis of his medical opinion on the question of a defendant's mental capacities (see *Matter of Lee v County Ct.,* 27 NY2d 432, 440-442, cert den 404 US 823). Incriminatory statements made by a defendant to a psychologist may not be utilized as part of a prosecution's case to establish a defendant's guilt (*People v Finn,* 64 AD2d 526; see *Collins v Auger,* 428 F Supp 1079). Here, Dr. Sharma's rebuttal was utilized not as a vehicle to establish defendant's mental capacity, but to present incriminatory statements concerning defendant's wounds. These statements bore significantly on the issue of self-defense and, concomitantly, on the ultimate question of guilt. This basic error was enhanced by the fact that the trial court failed to give cautionary instructions as to the use of the psychologist's testimony. Compounding this error is the fact that the only other evidence tending to establish that the wounds were self-inflicted is the testimony of the two State Police investigators, who, as the majority aptly notes, questioned defendant in violation of his right to counsel. Since these statements stand in sharp contrast with defendant's justification defense, a very real possibility exists that they contributed to his conviction (*People v Crimmins,* 36 NY2d 230, 257). ¶ In view of the foregoing, the statements should be suppressed, the conviction reversed, and the matter remitted for a new trial.