213 N.J. Super. 255 (1986)
517 A.2d 152
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BENJAMIN MCBRIDE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1986.
Decided October 21, 1986.
*259 Before Judges FURMAN, DREIER and STERN.
Eric H. Weinberg argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; Eric H. Weinberg, Designated Counsel on the brief; Benjamin McBride on supplemental pro se brief).
*260 Brian W. Mason, Assistant Prosecutor argued the cause for respondent (George L. Schneider, Essex County Prosecutor, attorney; Marc J. Friedman, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant has appealed from convictions on two counts of second degree aggravated assault, N.J.S.A. 2C:12-1b(1), and two counts of third degree terroristic threats, N.J.S.A. 2C:12-3. The charges were contained in two indictments consolidated for trial involving events occurring on May 10th, 20th and June 30th, 1982 and March 15th, 1983. Defendant was sentenced to a total of 25 years with 10 years of parole ineligibility. A $200 Violent Crimes Compensation Board penalty was also imposed. The original indictments additionally accused defendant of attempted murder and unlawful possession of a weapon concerning the June 30, 1982 incident, but the jury returned a not guilty verdict as to these two counts.
Defendant opposed the consolidation of the trials and twice moved unsuccessfully for a severance. Defendant's family had provided funds for private counsel concerning the June 30, 1982 and March 15, 1983 incidents embodied in one indictment; the Public Defender was assigned to represent defendant as to the May 10th and May 20th incidents described in the other. As a result of the consolidation, defendant was, therefore, represented by two attorneys at the trial. The trial judge ruled that although both could participate and question each witness, neither would be permitted to "cross-examine" (in the sense of asking leading questions on direct examination) of the other's witnesses. Defendant's motion to dismiss the indictment based upon the May 10th and 20th, 1982 attacks, based solely upon hearsay testimony before the grand jury, was denied by the court, as was defendant's motion to bar questioning concerning his 1964 atrocious assault conviction, 1979 involuntary manslaughter *261 conviction, and 1978 municipal marijuana possession conviction, should he choose to testify. During trial, defense counsel were precluded from cross-examining the State's medical experts Drs. Saur and Vij concerning their reliance upon the report of a clinical psychologist, Dr. Fox, who had invoked the psychologist-patient privilege established by N.J.S.A. 45:14B-28. Dr. Fox also refused to testify on the same ground.
The victim of the alleged attacks and threats was defendant's wife. They had been married less than four and one-half months prior to the May 10, 1982 incident. At that time, defendant was angered because his wife had received in her maiden name, an award as "Outstanding Mother of the Year" from her church. He allegedly beat defendant later that evening as they returned from a political affair in Newark. Although she attempted to escape, defendant drove them home and locked the victim in their house. She found a key, ran to a neighbor and then was taken to Beth Israel Hospital where police were summoned. The victim sustained a laceration over her eye, bruising and swelling of her hands and knees, and head trauma. She was released from the hospital the next day and no arrest was made.
On May 19-20, 1982 the McBrides attended an election meeting after which they, with her minister and another woman went to the McBride house for cocktails. The couple argued vehemently. The guests attempted to intervene, and the victim fled into the street with defendant in pursuit. He caught her and brought her back to the house and allegedly stated "I missed you last time  I'm going to kill you this time." Defendant was arrested and released on bail.
On June 30, 1982 the victim was home alone when the living room window was smashed, setting off the burglar alarm which in turn cut off the telephone line. She went downstairs, and found herself confronting defendant. After a struggle, the *262 victim was struck in the head with a metal pipe, and when she tried to escape, the defendant caught her, banged her head on the asphalt driveway and choked her, whereupon she blacked out. The police investigation of the incident revealed no evidence consistent with an attempted burglary. As a result of the attack of June 30, 1982, the victim was hospitalized in three different institutions through November 24, 1982. The ensuing condition, which apparently impaired both her consciousness and cognitive functions, resulted in an organic brain syndrome, the symptoms of which are disturbed mental behavior and "confabulation" (the making-up of stories), as well as retrograde amnesia (the inability to recall events just before the injury). Whether this condition was caused by her head injuries or by some other psycho-neurological disorder not related to the injury was not developed at trial as a result of the exclusion of Dr. Fox's report and testimony.
After the victim's release from the hospital, she resumed living with her husband, allegedly without memory of who had assaulted her on June 30, 1982. When in January 1983, the grand jury initially returned an indictment concerning the May 10th and May 20th, 1982 incidents, she requested that the indictment be dismissed, since she and her husband had reconciled. She refused to testify before the grand jury on this indictment, and, in fact, signed a power-of-attorney in favor of her husband during this period. Furthermore, she filed a claim with the Violent Crime Compensation Board concerning the June 30, 1982 incident, contending that the perpetrator was unknown.
On March 15, 1983 defendant allegedly again threatened to injure his wife. A day or two later she claims to have fallen down a staircase bumping her head, after which she had a "flashback" and regained the memory of the June 30, 1982 incident. She did not seek treatment for this accident. She brought charges against defendant for the June 30th incident and reactivated her complaint based upon the May 10th and *263 20th events. There apparently was some question as to the medical basis of defendant's claim that a blow to the head restored her memory; even the State's witness on cross-examination referred to this sudden revelation as an "exaggeration."[1]
Defendant has through counsel submitted six points on this appeal:
POINT I
Denial of defendant's motion to sever the indictments for purposes of trial constituted an abuse of the discretion reposing in the trial court, and constituted prejudice to the defendant's right to a fair trial and his right to counsel.
POINT II
The trial court abused its discretion in ruling that defendant's prior convictions could be used to impeach him.
POINT III
The trial court improperly forbade defendant's counsel from cross examining the State's expert witnesses by referring to the report of another expert, upon whom he had relied in forming his opinion.
POINT IV
The defendant was denied the effective assistance of counsel.
POINT V
The trial judge should have disqualified himself, since he knew the victim, and the court's conduct during the trial was inappropriate and denied the defendant the right to a fair trial.

*264 POINT VI
Assuming arguendo that the individual errors do not constitute reversible error, the errors aggregately denied the defendant a fair trial.
In a pro se supplemental brief he raises four additional issues:
POINT I
An indictment presented to the grand jury based on hearsay testimony and double hearsay, recanted hearsay testimony is a patiently [sic] defective legal document.
POINT II
Prosecutor's remarks during pre-trial hearings, trial, summation and sentencing phase were prejudicial and trial judge failed to deal properly with prosecutor's mis-conduct.
POINT III
The contamination affect [sic] of a related news paper article during jury deliberations denied the defendant a fair trial.
POINT IV
In the trial court below the judge charge to the jury was both confusing for the jury as well as prejudicial to the defendant and constituted a violation of due process.

I
Concerning the consolidation and severance issues, the trial judge carefully considered the benefits and detriments inherent in a single or multiple trials. He finally determined that since testimony concerning all of the events most probably would be admitted under Evid.R. 55 whether there were one or two trials, and many of the witnesses would be the same, judicial economy and a lack of prejudice to defendant warranted a consolidated trial. The trial judge was fully cognizant of the problems inherent in defendant's being represented by two attorneys, and further having to choose between testifying or not based upon conflicting advice of his attorneys and the quantum of proof against him which related to each indictment. On appeal, defendant argues that the joinder was improper and that defendant was materially hampered in the *265 presentation of his defense by the refusal of the trial judge to sever the claims, thus depriving defendant of the effective assistance of counsel.
The joinder rule, R. 3:7-6, permits two or more offenses to be charged in the same indictment
if the offenses charged are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan.
R. 3:15-2(b) grants discretion to a judge to order separate trials of counts in an indictment, a severance of defendants, or other appropriate relief if
it appears that a defendant or the State is prejudiced by a permissible or mandatory joinder of offenses.
Our courts recognize that multiple charges by their very nature suggest a propensity for criminal conduct and are thus potentially harmful to a defendant, but other considerations such as judicial economy must be weighed before a court would require a separate trial for each charge. See State v. Manney, 26 N.J. 362, 368 (1958); State v. Coruzzi, 189 N.J. Super. 273, 297-98 (App.Div.), certif. den. 94 N.J. 531 (1983). The overall consideration for a trial judge is whether the "defendant's right to a fair trial remains unprejudiced." State v. Coleman, 46 N.J. 16, 24 (1965), cert. den. 383 U.S. 950, 86 S.Ct. 1210, 16 L.Ed.2d 212 (1966); State v. Coruzzi, 189 N.J. Super. at 298.
Defendant's assertion that he would have testified concerning one of the events but not the others on the basis of his two attorneys' advice is little different than if he had a single attorney representing him in a multiple count indictment where the attorney would have advised defendant to testify concerning only the one event. Defendant's dilemma is also little different from a trial of a single count indictment where the defendant wishes to testify to impeach only one witness's testimony or concerning a single fact in the case, but, in doing so, he would open himself either to cross-examination concerning *266 prior convictions or to other credibility attacks on the doctrine of waiver.[2]
Defendant's dilemma stemmed from his choice to be represented by separate counsel. Although his family advanced the funds for private counsel for the one indictment, defendant apparently qualified for representation by the Public Defender, notwithstanding the flexible criteria for such representation. N.J.S.A. 2A:158A-5. Under this statute a defendant may qualify for representation by the Public Defender in certain types of cases, but not others. In this case with the indictments of similar complexity, however, he certainly was not required to continue the unusual posture of double representation. To permit this self-imposed problem to be dispositive on appeal would be to invite any defendant who could afford private counsel in a multiple-count case to employ two attorneys and then, if convicted, allege on appeal the receipt of conflicting advice. Cf. State v. Stockling, 160 N.J. Super. 486 (App.Div. 1978).
Defendant has also couched his argument in terms of the denial of his right to counsel, since the consolidated trials resulted in defendant being forced to choose between the conflicting advice of his two attorneys. A closer examination reveals the fallacy in the reasoning. The attorney representing defendant concerning the May 10th and 20th incidents advised defendant to testify. The attorney for the other charges advised to the contrary. The advice of each apparently was based upon what the situation would have been if the trial related *267 solely to the particular charges he was engaged to defend. But that was not the case. Defendant was being tried for multiple offenses. The advice of each should have taken into account the totality of the charges. On balance, defendant and his attorneys were put to no more of a choice than that which exists in any other criminal case where a party must decide as to whether particular evidence or testimony will be helpful or harmful. Defendant conferred with each of his attorneys and determined the advice he would follow. As noted in State v. Morales, 138 N.J. Super. 225, 231 (App.Div. 1975), "a separate trial should not be allowed merely because it would offer defendant a better chance of acquittal."

II
Defendant's adult criminal record contains three convictions. The first was in 1964 for atrocious assault and battery, for which defendant received an indeterminate term at Yardville Youth Reception and Correctional Center. He was paroled a year later. In 1971, he was convicted of negligent manslaughter and served 13 months of a two to three-year term at Trenton State Prison before being release on parole. In 1978, he was convicted in the Newark municipal court of possessing marijuana and was fined $60. The trial judge also noted that there were several additional arrests for assaultive-type offenses, as well as two indictments; but these other contacts with the criminal justice system would not be a proper subject of cross-examination, and we assume that they played no part in the court's decision. Although the last conviction for an indictable offense was 14 years prior to the trial, the marijuana conviction was but six years prior to the trial. The trial judge, relying on State v. Sands, 76 N.J. 127, 144-147 (1978), interpreting N.J.S.A. 2A:81-12, employed a proper analysis under Evid.R. 4, and determined that the convictions would be admissible. We see no abuse of the court's discretion.
*268 As noted in footnote 2, we could have rested our decision on this point upon State v. Whitehead, 203 N.J. Super. 509, 511-513 (App.Div.), certif. granted 102 N.J. 331 (1985), interpreting Luce v. United States, supra. We do not believe, however, that under New Jersey practice a defendant should be precluded from raising the court's incorrect ruling concerning the admissibility of the earlier convictions. Our pretrial motion practice provides ample opportunity for a defendant to test the admissibility of most remote convictions. Of course, as in Sands, the defendant may wait until he has viewed the case against him and then seek to limit the convictions that can be used for impeachment purposes. Where a defendant's decision not to take the stand is based upon an improper application of the Sands doctrine, the defendant should not be required to take the stand and be convicted on the basis of this improperly admitted evidence or otherwise in order to preserve the appealability of the issue. This is a matter of State law, viz., the interpretation of N.J.S.A. 2A:81-12 and its interrelationship with Evid.R. 4, following the guidelines of our Supreme Court in State v. Sands, supra. Since there is no constitutional impediment against our "providing a more protective rule than that followed under Federal law," State v. Haskell, 100 N.J. 469, 479 (1985); see also State v. Deatore, 70 N.J. 100, 112 (1976), we are not bound by Luce v. United States, supra. Luce itself cited and quoted from New Jersey v. Portash, 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979), where the Court noted that federal rights may be preserved for review by State procedures notwithstanding the dissenting justices' assertion that courts should not decide hypothetical cases. We note further that in other settings the New Jersey Supreme Court has not required that a witness be called so that the effect of an improper ruling can be demonstrated at trial.[3] We find that *269 our following of Luce v. United States and concurrence with State v. Whitehead, supra, would not accomplish the fundamental fairness that must be the touchstone of all judicial inquiry. We have, therefore, rested our decision on the correctness of the trial judge's determination, rather than on defendant being barred from presenting the issue in this court.

III
Defendant correctly notes that the trial court erred in precluding his counsel from examining Dr. Saur concerning Dr. Fox's psychological report. The trial judge based his ruling upon N.J.S.A. 45:14B-28. Dr. Saur testified that part of his post-discharge continuing diagnosis and treatment had been based upon the psychological report of Dr. Fox, and that her report was "an accurate evaluation." The report apparently referred to the victim's mental disorder as not organically caused by the head trauma and described certain problems the victim had with reality. The trial judge incorrectly based his ruling upon Rogalsky v. Plymouth Homes, 100 N.J. Super. 501, 505-06 (App.Div.), certif. den. 52 N.J. 167 (1968), interpreting the expert witness rule as it existed prior to the 1982 amendment of Evid.R. 56(2). That amendment expanded the basis for an expert opinion to facts and data other than those admissible in evidence "if of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."
N.J.S.A. 45:14B-28 declares that "confidential relations and communications between ... psychologist and [patient] *270 ... are placed on the same basis as those provided between attorney and client." The subsequent disclosure of Dr. Fox's findings to Dr. Saur, himself protected by the physician-patient privilege, would have made the report in Dr. Saur's hands likewise a privileged communication. The question, however, is whether the victim by signing the criminal complaint implicitly waived the privilege, at least insofar as the diagnosis of her mental condition, claimed by her to be caused by defendant's conduct, was concerned.[4] Although the psychologist-patient privilege affords even greater confidentiality than the physician-patient privilege, it still may be defeated where "common notions of fairness clearly compel at least limited disclosure of otherwise confidential communications." Arena v. Saphier, supra, 201 N.J. Super. at 89.[5] Moreover there even may be a Sixth Amendment and State constitutional right requiring the release of the report to defendant following an in camera review by the judge. See In re Myron Farber, 78 N.J. 259, 273-274 (1978), cert. den. sub nom. New York Times Co. v. New Jersey, 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978), interpreting the newsperson's privilege.
Defendant did not seek to lift the cloak of secrecy as to confidential communications made between the victim and Dr. Fox, but rather to permit Dr. Fox's conclusions to be shown to *271 the jury in order to appraise Dr. Saur's diagnosis. The trial judge was requested but refused to make even an in camera inspection of the notes and reports to determine relevance. Arena v. Saphier plainly calls for such an action on the part of the trial judge. 201 N.J. Super. at 90.[6] We see an inherent unfairness for the complaining witness to impose the stricture of confidentiality upon a psychologist or physician, thus preventing a defendant from reaching an item of evidence which a judge determines after a review of all relevant factors to the potentially exculpatory. The trial court effectively permitted the victim's uncorroborated tale of the events in question to stand unrebutted where there may have been a foundation for other causes of her mental disorder, thus affecting both her and Dr. Saur's credibility.
When Dr. Fox was called as a witness and invoked the psychologist-patient privilege, the court could have applied the standards now articulated in Arena v. Saphier. The judge should have reviewed the report in camera to determine whether the report or any part thereof was discoverable. He could have limited the scope of inquiry in order both to preserve the confidential communications that the victim may have made to her psychologist and to accommodate the defendant's need to show the mental condition of the victim, at least insofar as such condition would have been relevant to her credibility on the witness stand and to the weight to be accorded Dr. Saur's opinion.
Although there is no question that this evidential ruling was erroneous, we must measure this error against the totality of the trial. We cannot on the record before us determine whether the psychologist's report or testimony would have made a *272 significant difference and "would or could have affected the outcome of the trial." See State v. Carter, 91 N.J. 86, 113-14 (1982). It may be that Dr. Fox's report and testimony, when examined by a court, would be relatively innocuous, have been merely cumulative and have had little possibility of affecting the verdict. State v. Carter, at 114. On the other hand, the evidence may have been such as to have opened a significant impeachment of Dr. Saur's testimony or the victim's credibility. The trial judge is in the best position to make this assessment. The court should conduct the in camera review and order a new trial only if, after that review, he determines that release of the report and examination thereof may have affected the result. A new trial need only be ordered if the assessment is made in defendant's favor. We see no impediment to such a limited remand for factual findings by the trial judge on this issue. See State v. Carter, 85 N.J. 300 (1981).

IV
Defendant's next point is that he received ineffective assistance of counsel. Under Strickland v. Washington, 466 U.S. 668, 690-694, 104 S.Ct. 2052, 2066-2068, 80 L.Ed.2d 674, 695-698 (1984), defendant was required to demonstrate that the particular acts or omissions of counsel were the results of unreasonable professional judgment and that, but for his attorneys' unprofessional errors, "the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. From our review of this record, there is no hint of such unprofessional conduct on the part of either of defendant's attorneys.

*273 V
The trial judge admitted the report of the Beth Israel Hospital concerning the May 10, 1982 incident.[7] The record noted that she was beaten by her husband with his fists. Defense counsel requested that the words "by her husband" be eliminated from the record before it was given to the jury. The court denied this redaction in ruling that the record revealed only statements made to a physician for the purpose of treatment, admissible under Evid.R. 63(12). Defense counsel correctly argued that Cestero v. Ferrara, 57 N.J. 497, 501-02 (1971), required that extraneous statements not relevant to the requested treatment must be removed before the record is given to the jury. In that case, the plaintiff's statement that she had proceeded through the intersection when the light changed to green, after which she was hit, was found irrelevant for the purposes of medical treatment. See also State In the Interest of C.A., 201 N.J. Super. 28, 33-34 (App.Div. 1985).
We see this situation here. The fact that the victim was struck by someone's fists rather than another object may well have been relevant, but the fact that the attacker had been her husband was not. We find, however, that the improper admission of this reference was harmless error, in view of the other evidence concerning the source of the victim's injuries. Her testimony, buttressed by defendant's comments in the presence of third-parties who testified as to the May 20th incident, clearly established that defendant was the perpetrator of the May 10th attack.
In the event that the review concerning the psychologist's report results in a new trial, this reference in the hospital record should be redacted.

VI
We have reviewed the balance of the points raised by counsel and in the pro se brief. The issues of law raised are clearly *274 without merit and need not be the subject of extended discussion. R. 2:11-3(e)(2).
We merely note:
(A). There was no necessity for the trial judge to have disqualified himself, since his prior contact with the victim was so slight as to preclude any legitimate claim of bias.
(B). Since, with the exception of the failure of the court to admit the testimony of the psychologist, which may or may not constitute reversible error, we have found few errors in the trial. The aggregate weight of the alleged errors were clearly incapable of producing an unjust result. R. 2:10-2; State v. Orecchio, 16 N.J. 125, 129 (1954).
(C). A grand jury may indict "largely or wholly based on hearsay testimony." State v. Thrunk, 157 N.J. Super. 265, 278 (App.Div. 1978); State v. Ferrante, 111 N.J. Super. 299, 304 (App.Div. 1970); see also State v. R.W., 200 N.J. Super. 560, 572 (App.Div. 1985); State v. Stern, 197 N.J. Super. 49, 54 (App.Div. 1984). This is especially so where the grand jury did not require the victim's presence for the second proceeding. Compare State v. Costa, 109 N.J. Super. 243, 246-248 (Law Div. 1970), where the State could not explain the absence of a readily available witness.
(D). The various remarks of the prosecutor objected to by defendant, taken in context, appear to be either fair comment on the evidence or reasonable inferences from evidence adduced at trial. State v. Perry, 65 N.J. 45, 48 (1974).
(E). The trial judge properly handled the possible contamination of the jury by an article concerning wife beating which appeared in The Star Ledger on the morning when the judge was to charge the jury. The potentially tainted jurors were held as alternates and did not participate in the deliberation.
(F). Lastly, we see no reversible error in the charge when read as a whole. State v. Wilbely, 63 N.J. 420, 422 (1973).
*275 This matter is remanded to the trial judge for the taking of additional evidence concerning the issue discussed in Part III of this opinion. If he determines that, applying the standards of State v. Carter, supra, 91 N.J. at 113-115, the error, if any, was harmless, no new trial shall be ordered. If, however, he determines that the lack of discovery of the report may have materially affected the verdict, he shall order a new trial. His decision, of course, may be subject to further appellate review, limited to the points raised in the supplemental proceedings.
Remanded for further proceedings; we do not retain jurisdiction.
NOTES
[1] She directed her attorney, however, to contact the Violent Crimes Compensation Board, but there was no reference as to whether the money actually was returned. In fact, the award was not received by the victim until November or December of 1983. Since N.J.S.A. 52:4B-18 renders ineligible a victim related to and living in the same household with the offender, the victim's continued prosecution of the Violent Crimes Compensation Board claim was at least some evidence that defendant had not been the perpetrator of the June 30, 1982 event.
[2] An easy answer to this question would be that defendant is precluded from raising this issue, since he did not in fact testify, following Luce v. United States, 469 U.S. 38, 42, 105 S.Ct. 460, 464, 83 L.Ed.2d 443, 448 (1984); and see State v. Whitehead, 203 N.J. Super. 509, 511-513 (App.Div.), certif. granted 102 N.J. 331 (1985). As we note in our discussion, infra, concerning the admissibility of defendant's prior convictions for impeachment purposes, we disagree with the rationale of State v. Whitehead. The Supreme Court will resolve this question, and we, therefore, rest our affirmance of the trial judge's consolidation and severance rulings on other grounds.
[3] See State v. Fort, 101 N.J. 123, 131 (1985), where a witness had been previously sentenced pursuant to an agreement that he would not testify in favor of defendant. The Supreme Court in reversing the decision to the contrary held that defense counsel's election not to call the witness was no bar to raising the issue that the witness's testimony, if he could be persuaded to testify at all, would have been colored by his agreement with the State, the enforceability of which had not yet been adjudicated. We note that the prejudice to a defendant in not calling the witness in the usual case is appreciably less than being effectively precluded from testifying himself by the damaging effect of the admission of his prior convictions.
[4] We express no opinion here whether the specifics of the patient's disclosures to the psychologist would be implicitly waived. In view of the obvious need for protection of the personal revelations made to a psychotherapist, the courts have recognized the statute's purpose "to preclude the humiliation of the patient and the exposure of his most intimate thoughts and emotions." Arena v. Saphier, 201 N.J. Super. 79, 89 (App.Div. 1985).
[5] Cf. State v. Alston, 212 N.J. Super. 644, 648-649 (App.Div. 1986), wherein this court granted the State the right to examine a defendant's confidential medical records. There the court determined that the demand fell within the exception to the patient-physician privilege for a condition which is an element or factor in the "claim or defense of the patient." N.J.S.A. 2A:84A-22.4 (Evid.R. 26A-2). No such statutory exception is contained in the psychologist's privilege, N.J.S.A. 45:14B-28 (Evid.R. 26A-1), which, as noted above, is coextensive with the attorney-client privilege.
[6] We acknowledge that Arena v. Saphier was decided after the trial in this case. But the principles and methodology, were foreshadowed in State v. Briley, 53 N.J. 498, 506 (1969), discussing the marital privilege, and in State v. Boiardo, 82 N.J. 446, 467 (1980); and In re Myron Farber, supra, 78 N.J. at 277.
[7] This point has not been raised in the appellate briefs, but our review of the record indicates that the objection was made below and, since there may be a retrial, we have considered the point on our own motion.