OPINION OF THE COURT
Alan D. Oshrin, J.
This is a defamation action in which the plaintiff, a West Is-lip school teacher, alleges that he was defamed by the defendants, members of the West Islip Tax Pack. As a result of the defamation he contends that he sustained bodily injury, damage to his professional reputation and livelihood. In particular, he asserts psychological visits due to emotional stress as an item of damage, as well as anxiety, lack of sleep, nervousness and stress-related back pain. At his deposition the plaintiff testified in response to a question as to whether he "had ever seen any psychologist, psychotherapist, psychiatrist or psychoanalyst before the accident of May 14, 1992” that approximately two years before the incident the school guidance counselor referred his son, his wife, and himself to a psychologist for family counselling. The plaintiff further testified that the family counselling did not relate to the plaintiff and that approximately 20 visits were made to this psychologist.
By notice of discovery and inspection dated October 6, 1993, the defendant, Mrs. Ronald Bova, sought to obtain a complete copy of the plaintiff’s family therapy records and a duly executed authorization to obtain such records. The plaintiff objects to such discovery upon the grounds that the records are privileged pursuant to CPLR 4507, the records are not relevant and that the disclosure of the records would invade the privilege of confidentiality of the plaintiff’s son and wife. The plaintiff further asserts that while it may be that he has suffered stresses unrelated to the defamation the fact that he claims stress as being related to the defamation does not grant the right to conduct this discovery into preincident family counselling. In support of their application to compel discovery of the family counselling records the defendants argue that by raising psychological visits due to emotional stress, anxiety, lack of sleep, nervousness and stress-related back pain as injuries suffered the plaintiff has placed his mental condition in issue and, therefore, that the defendants are entitled to ex *954 amine the records of any psychologist who has treated the plaintiff to afford them the opportunity to properly defend the action.
CPLR 4507 provides in pertinent part that "[t]he confidential relations and communications between a psychologist registered under the provisions of article one hundred fifty-three of the education law and his client are placed on the same basis as those provided by law between attorney and client, and nothing in such article shall be construed to require any such privileged communications to be disclosed.” In turn, CPLR 4503 (a) provides in pertinent part that "[u]nless the client waives the privilege, an attorney or his employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication, in any action, disciplinary trial or hearing, or administrative action, proceeding or hearing conducted by or on behalf of any state, municipal or local governmental agency or by the legislature or any committee or body thereof.”
In interpreting CPLR 4507 the Court of Appeals found that the Legislature by equating the psychologist-client privilege with the attorney-client privilege and acknowledging the marked difference in New York case law holding the physician-patient privilege waived under circumstances in which the attorney-client privilege has been held not waived, held that the psychologist-client privilege is broader than the physician-patient privilege (People v Wilkins, 65 NY2d 172 [1985], revg 101 AD2d 957 [1984]).* "The clear import of [this holding] is that different privileged communications have varying weight in terms of legal importance and, therefore, insofar as concerns confidentiality, are entitled to varying degrees of protection. Plainly among the strongest and most vital privileges is that *955 accorded attorney-client communications’’ (People v Radtke, 155 Misc 2d 21, 28 [1992]).
At the outset, the court recognizes that there is a possibility for an inconsistency whereby a communication with a psychologist will remain protected, when the same communication with a psychiatrist, a physician whose communications fall within the physician-patient privilege, will be discoverable. Generally, by bringing or defending a personal injury action in which mental or physical condition is affirmatively placed in issue, a party waives the physician-patient privilege as to the physical condition, mental condition and treatments raised (see, Koump v Smith, 25 NY2d 287 [1969]; Iseman v Delmar Med.-Dental Bldg., 113 AD2d 276 [1985]). The rationale for this general rule is that as a practical matter, a party who affirmatively asserts a mental or physical condition must eventually waive the privilege to prove such party’s case or defense and that to uphold the privilege would allow a party to use it as a sword rather than a shield. A party should not be permitted to assert a mental or physical condition in seeking damages or in seeking to be absolved from liability and at the same time assert the privilege in order to prevent the other party from ascertaining the truth of the claim and the nature and extent of the injury or condition (Koump v Smith, 25 NY2d 287, supra).
The court also recognizes that by placing a psychologist-client communication on the same footing as an attorney-client communication as opposed to a physician-patient communication a tension is created with the liberal policy of discovery where a party puts his physical or mental condition in controversy as stated in CPLR 3121 (see, Watson v State of New York, 53 AD2d 798 [1976]; Shalhoub v Viverito, 133 Misc 2d 765 [1986]). CPLR 3121 (a) provides in pertinent part "[a]fter commencement of an action in which the mental or physical condition * * * of a party * * * is in controversy, any party may serve notice on another party to submit to a physical, mental * * * examination by a designated physician * * * The notice may require duly executed and acknowledged written authorizations permitting all parties to obtain, and make copies of, the records of specified hospitals relating to such mental or physical condition”.
In the case of the communication to a psychologist, the mere commencement of an action in which the mental condition of a party is placed in controversy is not sufficient to automatically permit the implying of a waiver of the psychologist-client privilege just as the commencement of an action in which legal *956 communications or advice are placed in controversy is not sufficient to automatically permit the implying of a waiver of the attorney-client privilege (see, Raphael v Clune, White & Nelson, 146 AD2d 762 [1989]; Jakobleff v Cerrato, Sweeney & Cohn, 97 AD2d 834 [1983]; Allen v West Point-Pepperell, 848 F Supp 423 [1994]; Connell v Bernstein-Macauley, Inc. 407 F Supp 420 [1976]). In this regard, the court acknowledges the case of Baecher v Baecher (58 AD2d 821 [1977], Iv denied 43 NY2d 645 [1978]) where the appellate court found without discussion or analysis, that a party had waived the right to the psychologist-client privilege by actually contesting custody, thereby putting the party’s mental and emotional well-being into issue. Although unstated, it appears as if the appellate court’s ruling was based upon a finding that confidentiality must yield to disclosure in the face of a countervailing public interest such as the welfare of minor children (see, Ace v State of New York, 146 Misc 2d 954 [1990], affd 207 AD2d 813 [1994]).
Having recognized the possibility for inconsistencies in the protection of communications made to psychologists and psychiatrists and having recognized the tension between the broader psychologist-client privilege and the liberal policy of discovery under CPLR 3121, the court observes that the removal of the possibility for inconsistency and a reconciliation of the tension is for the Legislature. In New Jersey, however, a jurisdiction with a similar statutory psychologist-client privilege one appellate court has ruled that the confidential nature of the relation between a psychologist endeavoring to cure an emotional or mental problem and a client more closely resembled the relation between an attorney and his client than that of a physician, treating an illness or disease and his patient (see, Arena v Saphier, 201 NJ Super 79, 492 A2d 1020 [1985]). The Arena court found that the nature of psychotherapy might well justify a greater degree of confidentiality and protection than is generally afforded medical treatment of a physical condition; that the nature of the psychotherapeutic process is such that full disclosure to the therapist of the patient’s most intimate emotions, fears and fantasies is required; that the patient rightfully expects that the patient’s personal revelations will not generally be subject to public scrutiny or exposure; that many physical ailments might be treated with some degree of effectiveness by a doctor whom the patient did not trust but a psychologist must have the patient’s confidence or he cannot help the patient, and that discoverability of the psychologist’s consultation notes should be considered *957 within the context of the more limited waiver doctrine applicable to the attorney-client privilege (see also, State of New Jersey v L.J.P., 270 NJ Super 429, 637 A2d 532 [1994]; Ziemann v Burlington County Bridge Commn., 155 FRD 497 [1994]; State of New Jersey v McBride, 213 NJ Super 255, 517 A2d 152 [1986]). One commentator in discussing People v Wilkins (supra) and Arena v Saphier observed that "placing the psychologist-patient privilege on the same basis as the attorney-client privilege is not as incongruous as it might first appear” (see, Lewin, 1985 Survey of New York Law, Evidence, 37 Syracuse L Rev 425, at 497-499, n 180). Perhaps then, the more appropriate distinction for the purpose of privilege is one privilege for psychologists and psychiatrists who treat emotional or mental problems and another privilege for physicians who treat illnesses and diseases of the body.
To determine whether there is a waiver of the psychologist-client privilege, therefore, the court must look to the standard to be applied to a waiver of the attorney-client privilege. It has been said that the privilege created by CPLR 4503 (a) is not absolute and that it exists to aid the orderly administration of justice by ensuring the frank revelation of pertinent information between attorney and client (see, Matter of Priest v Hennessy, 51 NY2d 62 [1980]; Matter of Jacqueline F. v Segal, 47 NY2d 215 [1979]; Beard v Ames, 96 AD2d 119 [1983]). It has also been said that the attorney-client privilege, like all privileges, operates as an exception to the general requirement that all persons give testimony upon facts within their personal knowledge inquired of in a court of law, and that, as such an exception, and notwithstanding its desirable purpose, the attorney-client privilege constitutes an obstacle to the truth-finding process, the invocation of which should be cautiously observed to ensure that its application is consistent with its purpose (see, Matter of Priest v Hennessy, 51 NY2d 62, supra; Matter of Jacqueline F. v Segal, 47 NY2d 215, supra). Moreover, it has been stated that much ought to depend on the circumstances of each case and that only if the injury to the confidential relationship from disclosure is greater than the benefit thereby gained should the privilege be recognized (see, Beard v Ames, 96 AD2d 119, supra; Hearn v Rhay, 68 FRD 574 [1975]).
The courts have held that a client who voluntarily testifies to a privileged matter, who publicly discloses such matter, or who permits the attorney to testify regarding the matter is deemed to have impliedly waived the attorney-client privilege *958 (see, Jakobleff v Cerrato, Sweeney & Cohn, 97 AD2d 834, supra, citing People v Shapiro, 308 NY 453 [1955]; People v O’Connor, 85 AD2d 92 [1982]; Kitz v Buckmaster, 45 App Div 283 [1899]). The courts have also found a waiver where the client places the subject matter of the privileged communication in issue or where the invasion of the privilege is required to determine the validity of the client’s claim or defense and application of the privilege would deprive the adversary of vital information (see, Onco Bank v Proteínas Del Pacifico, 179 AD2d 390 [1992]; Raphael v Clune, White & Nelson, 146 AD2d 762, supra; Paruch v Paruch, 140 AD2d 418 [1988]; Village Bd. v Rattner, 130 AD2d 654 [1987]; Jakobleff v Cerrato, Sweeney & Cohn, 97 AD2d 834, supra; Bowne of N. Y. City v Ambase Corp., 150 FRD 465 [1993]; Connell v Bernstein-Macauley, Inc., 407 F Supp 420, supra; Hearn v Rhay, 68 FRD 574, supra).
In the case at bar, the plaintiff claims that as a result of the defamatory conduct of the defendants, he has suffered psychological and emotional harm. Specifically, the plaintiff claims psychological visits due to emotional stress, anxiety, lack of sleep, nervousness and stress-related back pain. Two years prior to the incident in question, the plaintiff, his wife and son, were referred to a family counselor by the school guidance counselor. The three of them made approximately 20 visits to the psychologist. After the incident the plaintiff, by himself, has made visits to a psychologist. The plaintiff has executed an authorization as to these postincident psychological records. By claiming psychological and emotional harm, injuries and damages the plaintiff has placed the subject matter of the privileged communications to the family counselor in issue. Further, there being both pre- and postincident psychological visits an invasion of the privilege as to the family counselor is required to determine the validity of the plaintiff’s claim that his emotional stress, anxiety, lack of sleep, nervousness and stress-related back pain are the result of the defendant’s defamatory conduct herein and are not the result, in whole or in part, of some unrelated source of emotional stress or strain. Concomitantly, application of the privilege as to the family counselor would deprive the defendants of vital information. If such family counselling records ultimately reveal no other source of emotional stress or strain, the information is no less vital to the preparation of the defendants’ case.
The communications to the family counselor are integral to the defendants’ preparation of a defense in this action and to deny access to these communications would preclude the court *959 from a fair and. just determination of the issues (see, Hearn v Rhay, 68 FRD 574, supra), permit the plaintiff to use the privilege as a sword rather than merely a shield and would permit the plaintiff to invoke the privilege to render conclusive his own evaluation that the materials in question do not pertain to his own emotional or psychological situation and are not relevant to the present action (see, Arena v Saphier, 201 NJ Super 79, 492 A2d 1020, supra). Although the psychologist-client privilege affords even greater confidentiality than the physician-patient privilege, where as here the client discloses mental or emotional problems during the course of litigation in which they became an issue (and for which he has been treated by a psychologist) and also acknowledges preincident visits to a psychologist but claims such visits are not related to, and have no bearing upon his present emotional and psychological problems, the privilege may be defeated where common notions of fairness clearly compel at least limited disclosure of otherwise confidential communications (see, Arena v Saphier, 201 NJ Super 79, 492 A2d 1020, supra; see also, State of New Jersey v L.J.P., 270 NJ Super 429, 637 A2d 532, supra; Ziemann v Burlington County Bridge Commn., 155 FRD 497, supra; State of New Jersey v McBride, 213 NJ Super 255, 517 A2d 152, supra). Although the mere commencement of an action in which the mental condition of a party is placed in controversy is not sufficient to automatically permit the implying of a waiver of the psychologist-client privilege, when the commencement of such an action is coupled with an acknowledgment by the plaintiff of preincident visits with a psychologist and a statement by the plaintiff that the emotional or psychological problems which caused him to visit a psychologist at the present time are not the same as those which caused him to visit a psychologist prior to the subject incident, a limited waiver of the privilege should be implied.
Inasmuch as the materiality and relevance of the communications to the family counselor cannot be decided in a factual vacuum, the family counselor is to submit the counsel-ling records to the court for an in camera review (see, Arena v Saphier, 201 NJ Super 79, 492 A2d 1020, supra; see also, State of New Jersey v L.J.P., 270 NJ Super 429, 637 A2d 532, supra; Ziemann v Burlington County Bridge Commn., 155 FRD 497, supra; State of New Jersey v McBride, 213 NJ Super 255, 517 A2d 152, supra). Upon submission of the records the psychologist is to indicate to the court that which the psychologist believes should be redacted without actually making redac *960 tians on the records submitted. In reviewing these records the court will scrupulously redact references and observations as pertain to the plaintiff’s wife and son, who are not parties to this action. If upon review the court determines that any information contained in the records is material and necessary to the defense of this action (CPLR 3101) then the court will provide redacted records to the defendants.
The court is not unmindful that even this limited preliminary disclosure somewhat dilutes the effectiveness of the psychologist-client privilege. The court also recognizes that this intrusion must be considered in light of the liberal disclosure rules of CPLR article 31, the purpose of which is to advance the function of a trial, to ascertain truth and to accelerate the disposition of suits (see, Allen v Crowell-Collier Publ. Co., 21 NY2d 403 [1968]). Under the circumstances presented, the benefits to be gained from limited disclosure of the privileged communications outweigh the injury to the psychologist-client relationship.

 Compare, State of Florida v Axelson (80 Misc 2d 419 [1974]) where the court held that the psychologist-client privilege was no broader than the physician-patient privilege, notwithstanding the language of CPLR 4507, finding that it would be anomalous to hold that a psychologist has a greater privilege than a psychiatrist. This holding was specifically rejected by the Court of Appeals in People v Wilkins (supra). Compare also, Matter of Doe v Hynes (104 Misc 2d 398 [1980]) where the court found the psychologist-client privilege to be coextensive with the physician-patient privilege, although the statute, on its face, appears to give the psychologist-client privilege greater breadth.