KING RECORDS, INC., Appellant, *v.* JAMES BROWN et al., Respondents.

First Department, October 8, 1964.

*Milton S. Gould* of counsel (*Michael Leschnitzer* with him on the brief; *Shea, Gallop, Climenko & Gould,* attorneys), for appellant.

*Martin J. Machat* and *Alan Kahn* for James Brown and another, respondents.

*Ambrose Doskow* of counsel (*Ernest A. Gleit* with him on the brief; *Rosenman Colin Kaye Petschek & Freund,* attorneys), for Mercury Record Corporation and another, respondents.

McNALLY, J. The question presented is whether plaintiff-appellant is entitled to an injunction *pendente lite* restraining violation of an express negative covenant not to " perform for the purpose of making phonograph records for any person other than us ".

Defendant James Brown is a vocalist, musician and orchestra leader. On June 23, 1960 plaintiff and Brown entered into a written agreement whereby his "exclusive professional services in connection with the production of phonograph records" were engaged by plaintiff for the period of five years commencing July 1, 1960. Thereby substantial payments and royalties were required to be and were paid by plaintiff to Brown. Brown covenanted during the contract period not to make recordings for any other person; the contract recites his "services are unique and extraordinary". Two extensions of the original term of the basic agreement have been entered into, the effect of which we do not now decide since the original term of five years has not expired.

On January 20, 1964 Brown entered into a recording agreement with Fair Deal Records, the predecessor of defendant Fair Deal Record Corp. Fair Deal was organized by Brown and his manager. On February 28, 1964 Fair Deal granted to defendant Mercury Record Corporation the exclusive right to distribute and sell Brown's recordings. Fair Deal warranted to Mercury that it had an exclusive recording agreement with Brown. Mercury's president admits knowledge "that Brown's recordings had appeared on the label of the plaintiff". Mercury received assurances from Brown's manager that "Brown was not under any obligation to record for King". Mercury's president knew that Brown and his manager had formed Fair Deal. Mercury's attorney inquired of American Federation of Musicians as to the existence of any contract between Brown and the plaintiff; he was informed no such contract had been filed with the Federation. No attempt was made by the corporate defendants to ascertain from the plaintiff whether it had or claimed a contract with Brown. We conclude on this record that the corporate defendants had knowledge of plaintiff's contract with Brown for his exclusive recordings.

The 1960 contract expressly provides Brown's services are unique and extraordinary. The nature and extent of the recordings made by Brown under plaintiff's contract and the large quantity thereof publicly sold substantiate the contract characterization of Brown's services as unique and extraordinary. Mercury's president verifies that within two months of the contract with Fair Deal it paid $27,500 to Fair Deal and advanced costs of recordings to the extent of $10,000. Thereby is confirmed Mercury's appraisal of Brown's services as unique and extraordinary. (See *Purchasing Assoc.* v. *Weitz,* 13 N Y 2d 267, 274.)

Brown and Fair Deal cross-moved for a stay of proceedings pending arbitration. On March 18, 1959 plaintiff entered into a collective bargaining agreement with American Federation of Musicians of the United States and Canada relative to members of the Federation denominated "musicians". The collective bargaining agreement incorporates the provisions of the constitution and by-laws of the Federation. The said constitution and by-laws provide for arbitration of any claim arising from any agreement relating to services of a musician member of the Federation; also, that no contract with a musician member of the Federation shall be effective unless approved by its executive board.

Plaintiff argues with great force that its contract with Brown pertains to his professional services as a vocalist, not as a musician within the meaning of the collective bargaining agreement. It is unnecessary to decide that issue, although the practical interpretation of said agreement would seem to sustain the plaintiff's view. Plaintiff also argues that the contract with Brown does not itself contain provision for arbitration and does not adequately incorporate the arbitration provisions of the Federation's constitution and by-laws. An agreement to arbitrate must be direct and the intention made clear without "implication, inveiglement or subtlety". (*Matter of Doughboy Ind.* [*Pantasote Co.*], 17 A D 2d 216, 220.) (*Matter of Riverdale Fabrics Corp.* [*Tillinghast-Stiles Co.*], 306 N. Y. 288, 289, 291; *Matter of Lehman v. Ostrovsky,* 264 N. Y. 130, 132.) The agreement relied on herein is neither clear nor direct.

If it be assumed, *arguendo,* for the purpose of this appeal that Brown is a musician and that the provision for arbitration applies, nevertheless, Brown may not avail himself of arbitration, a right which is vested exclusively with the collective bargaining agent, the Federation. (*Parker v. Borock,* 5 N Y 2d 156.) The application for a stay pending arbitration constitutes an exercise of the right to arbitration since the stay is the exclusive remedy in respect of an action allegedly in violation of the provision for arbitration. (See *Matter of River Brand Rice Mills v. Latrobe Brewing Co.,* 305 N. Y. 36, 42–43.)

We note defendants' claim that plaintiff's contract was not approved by the Federation as provided in the collective bargaining agreement. We need only observe that the provisions of the collective bargaining agreement are not available to Brown and that the Federation, the collective bargaining agent in whom are vested the rights under said agreement, is not a party and makes no claim thereon. Moreover, the corporate defendants are not parties to and have no rights under the said agreement.

The various defenses pleaded by the defendants are factually unsupported.

The order should be modified, on the law, on the facts and in the exercise of discretion and the motion for an injunction *pendente lite* granted to the extent of restraining defendant Brown from vocal phonograph recordings and restraining the corporate defendants from causing or providing such recordings or manufacturing, distributing or selling any vocal phonograph recordings of defendant Brown; the cross motion of defendant Brown denied; and, as so modified, the order should be affirmed. Settle order providing for bond.

EAGER, J. (concurring). I would hold that the plaintiff was bound by the provisions for arbitration contained in the constitution and by-laws of the American Federation of Musicians. The collective bargaining agreement between plaintiff and the Federation contained the express provision that " [a]ll present provisions of the Constitution, By-Laws, rules and regulations of the Federation * * * are made a part of this agreement ". Clearly, plaintiff as a knowledgeable employer in the recording business was well aware of the provisions for the arbitration of employee grievances contained in the said constitution and by-laws and expressly made a part of the collective bargaining agreement.

There is, however, no showing by the defendants that the grievance procedure, as agreed upon, has been invoked by the plaintiff or the Federation or that the defendant Brown, as an alleged employee of the plaintiff, has the right to initiate such procedure. I agree with Mr. Justice McNALLY that, on the record here before the court, it does not appear that the alleged contractual provisions for arbitration are directly enforcible by the defendant Brown or his codefendants. Generally speaking, " [a]n individual member of a labor union has no right to compel arbitration under a collective labor agreement signed by the union and the employer." (33 N. Y. Jur., Labor and Labor Relations, § 213, p. 27. See, also, 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7503.10; *Matter of Soto* [*Goldman*], 7 N Y 2d 397, 400; *Matter of Bakery Drivers* [*Krug Baking Co.*], 19 A D 2d 301.) On this basis, I concur in the modification of the order appealed from to grant an injunction *pendente lite* to plaintiff and to deny cross motion of defendants to stay the action.

VALENTE, J. (dissenting). I dissent and would affirm the order on the opinion of Justice LORETO at Special Term. I would add, however, that I am in agreement with that portion of the con-

curring opinion of Justice EAGER which would hold that plaintiff was bound by the arbitration provisions in the constitution and by-laws of the American Federation of Musicians.

Where I part company with Justice EAGER and the majority of this court is on the ground on which they rest the denial of the application to stay the action, viz., that an individual member of a labor union has no right to compel arbitration under a collective labor agreement between a union and employer. That rule of law followed in *Parker* v. *Borock* (5 N Y 2d 156) and *Matter of Soto* (*Goldman*) (7 N Y 2d 397) has no relevancy to the case at bar. Injection of that principle in the instant case fails to recognize the true nature of the defendant's motion — which is merely to stay the pending action — and to distinguish such an application from one to compel arbitration.

A party seeking a stay of an action does not have to move, at the same time, to compel arbitration (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7503.18; *Simon* v. *Vogel,* 9 A D 2d 63, 64). The plaintiff, who is thus stayed, may then initiate arbitration proceedings against the appropriate party. (See *Guerra* v. *Krueger Corp.,* 4 Misc 2d 696.)

Reason and consistency require that if an employee is precluded from suing an employer who has a collective agreement with a union, or may not compel the employer to arbitrate, then the employer should be equally barred, in contravention of the collective agreement from asserting a claim against the employee in an action, where the employer has agreed to arbitrate such disputes with the union. It would seem that the same impediment preventing the employee to sue his employer would likewise stand in the way of a suit by the employer against the employee. All the employee is asking here is that plaintiff's suit be stayed. He is not demanding that the employer arbitrate the dispute with him. The granting of a stay of the action would then relegate the plaintiff to resort to arbitration with the proper party to resolve the dispute if the plaintiff were still inclined to press the demand for an injunction. Under the circumstances, defendants were within their rights to seek a stay of the action.

BREITEL, J. P., and STEUER, J., concur with McNALLY, J.; EAGER, J., concurs in opinion. VALENTE, J., dissents in opinion.

Order, entered on June 11, 1964, modified, on the law, on the facts and in the exercise of discretion, and the motion for an injunction *pendente lite* granted to the extent of restraining defendant Brown from vocal phonograph recordings and restraining the corporate defendants from causing or providing

such recordings or manufacturing, distributing or selling any vocal phonograph recordings of defendant Brown; the cross motion of defendant Brown denied; and, as so modified, the order is affirmed, with $30 costs and disbursements to appellant. Settle order on notice providing for bond.