Donald S. ENGEL; Engel & Engel, Plaintiffs–Appellants,

v.

CBS INCORPORATED; Moses & Singer; Stanley Rothenberg, Defendants–Appellees.

No. 91–55508.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1992.

Decided Dec. 16, 1992.

As Amended Feb. 5, 1992.

Mark D. Passin, Engel & Engel, Los Angeles, Cal., for plaintiffs-appellants.

David A. Battaglia and Wayne W. Smith, Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendants-appellees.

Before: TANG, SCHROEDER, and BEEZER, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an appeal from an entry of summary judgment in favor of the defendant, CBS Inc., in an action for malicious prosecution. The plaintiff who brought this action, Don Engel, is counsel to the lead singer of the popular rock music group Boston. Plaintiff Engel alleged that CBS's suit against him, to enjoin his conduct in representing the group, was vexatious litigation. In granting summary judgment, the district court held that the law of California, the place of the plaintiff's domicile, rather than the law of New York, the jurisdiction of the purported vexatious litigation, applied. We disagree with the district court's choice of law analysis, however, and hold that New York law governs resolution of this case because under California's comparative impairment analysis, New York's interests would be more significantly impaired if its law were not applied.

This conflict of law analysis is relevant because New York imposes a special injury requirement in malicious prosecution cases. Under New York law, plaintiff must ordinarily establish damages flowing from interference with person or property, beyond the damages normally attendant upon litigation. Under California law, there is no such special injury requirement. The law chosen in this case could definitively resolve the matter. With respect to the elements common to a claim for malicious prosecution under either New York law or California law, the complaint is sufficient. However, because of New York's special injury requirement, we conclude that Engel has not yet pleaded a sufficient claim under New York law and remand for him to have the opportunity to amend the complaint.

*Facts and Procedural Background*

The facts of this case are not seriously disputed. In 1976, CBS entered into an exclusive record contract with the music group Boston for the delivery of a total of ten record albums. The contract provided that neither Boston nor Boston's lead singer Donald T. Scholz, could render services for the purpose of recording albums for anyone other than CBS. Boston produced two albums for CBS: "BOSTON" and "DON'T LOOK BACK."

In October of 1983, CBS filed suit in the Southern District of New York against Boston's members and managers for breach of contract, seeking damages in excess of $20,000,000. CBS asserted that Boston had breached the contract by failing to deliver the third album. Members and managers of Boston countered that CBS had wrongfully refused to disburse royalties earned on the first two albums.

In 1984, CBS learned that Donald S. Engel, counsel to Boston's leader, Scholz, was endeavoring to negotiate a new record contract with record companies other than CBS. In February of 1984, Engel informed CBS, in a letter, that Boston considered "itself completely free of its obligation to continue to attempt to provide recording performances of BOSTON to CBS" and that Engel intended to "negotiate an appropriate deal for the release of the next BOSTON album on a label other than CBS." In early August of 1984, Engel's negotiations with MCA Records culminated in a contract between Scholz (on behalf of Boston) and MCA for the delivery of a third Boston album, "THIRD STAGE." This contract, like the contract with CBS, prevented Scholz from making recordings for companies other than MCA.

In late August of 1984, after the MCA–Scholz contract was executed, and while the litigation between CBS and Boston was still proceeding, CBS filed a second action in the United States District Court for the Southern District of New York. In this action, CBS sought to enjoin the named defendants from entering into a contract for delivery of the third Boston album. This complaint named Scholz, Engel, Jeff

Dorenfeld (Scholz's agent), and MCA Records, and specifically alleged that Engel was liable for copyright infringement and breach of contract, based on his participation in the negotiations with other record companies. In February of 1985, the Southern District of New York granted summary judgment in this case in favor of Engel and against CBS.

In November of 1985, Donald Engel and his law firm, Engel & Engel, filed this suit for malicious prosecution in California district court. A lengthy stay of proceedings was entered to allow resolution of the breach of contract action filed by CBS in New York. That litigation culminated in the recovery by Scholz of approximately $6,500,000 from CBS. In 1991, the district court in California granted summary judgment in favor of CBS on Engel's complaint for malicious prosecution. The court held that Engel's claim was barred as a matter of law because CBS had probable cause to institute the prior litigation in New York.

There are three issues we must reach. First, we must review whether the district court was correct in holding that CBS had probable cause to file the breach of contract action in New York. Second, because we conclude that CBS did not have probable cause to file that action against Engel, we must decide whether the law of California or the law of New York governs Engel's claim. Although the probable cause determination is common to both the law of New York and the law of California, with respect to other elements of the tort of malicious prosecution, the states' tests differ and thus the choice of law question becomes relevant. Third, because our choice of law analysis directs us to apply New York law, we must decide whether Engel's complaint satisfies the elements of a malicious prosecution action under New York law.

### Probable Cause Determination

■ A civil action for malicious prosecution requires proof of the following elements:

1. Commencement or continuance of a criminal, civil or administrative proceeding;
2. Its legal causation or institution by the present defendant against the plaintiff, who was the defendant in the original proceeding;
3. Its bona fide termination in favor of the present plaintiff;
4. The absence of probable cause for such proceeding;
5. Malice; and
6. Damage to the plaintiff.

*See* 3 J.D. Lee & Barry A. Lindahl, *Modern Tort Law* § 40.04 (Rev.Ed.1988) (footnotes omitted); Restatement (2d), Torts, § 674. California law and New York law require proof of these basic elements. *See Bertero v. National General Corp.*, 13 Cal.3d 43, 118 Cal.Rptr. 184, 189–90, 529 P.2d 608, 613–14 (1974) (listing elements of malicious prosecution claim under California law); *Burt v. Smith*, 181 N.Y. 1, 73 N.E. 495, 496 (1905) ("A malicious prosecution is one that is begun in malice, without probable cause to believe it can succeed, and which finally ends in failure."), *writ of error dismissed*, 203 U.S. 129, 27 S.Ct. 37, 51 L.Ed. 121 (1906).

■ The parties agree that the only issue in dispute with respect to these elements is whether probable cause supported the lawsuit filed by CBS against Engel as counsel for Scholz. We disagree with the district court's conclusion that there was probable cause supporting CBS's action against Engel, who was the attorney representing the party which purportedly breached its contract with CBS. To determine whether probable cause existed, the court needed to examine the law of the jurisdiction where the purportedly malicious civil proceeding was filed, in this case New York.

In New York, "[p]robable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Burt v. Smith*, 73 N.E. at 496. Under New York law, an attorney generally cannot be held liable to a third

party for purported injuries caused by services performed on behalf of a client, or advice offered to a client, absent "a showing of fraud or collusion, or a malicious or tortious act." *Pancake v. Franzoni*, 149 A.D.2d 575, 540 N.Y.S.2d 674, 674 (2d Dep't.1989); *Kasen v. Morrell*, 18 Misc.2d 158, 183 N.Y.S.2d 928, 933 (N.Y.App.Div. 1989).

The cases cited by CBS are not to the contrary. They too involve instances of malicious, fraudulent, or collusive conduct on the part of an attorney. *Kahn v. Crames*, 92 A.D.2d 634, 459 N.Y.S.2d 941, 942–43 (1983) (malicious prosecution action sustained because the attorneys "misappropriated and converted and criminally retained" property); *Koger v. Weber*, 116 Misc.2d 726, 455 N.Y.S.2d 935, 936 (N.Y.Sup.Ct.1982) (attorney acted wrongfully in arranging for door locks to be changed on the apartment from which his client was evicted). In *Riverside Finance Corp. v. Coniglio Builders, Inc.*, 73 A.D.2d 1039, 425 N.Y.S.2d 433 (1980), an attorney was properly named as a defendant where he assisted in the sale of his client's property without mentioning that the property was encumbered by the plaintiff's valid bond and mortgage. *Id.* The complaint alleged that the attorney acted deceitfully and knew that the plaintiff held a valid security interest in the property. The Second Circuit decision, relied on by CBS, also requires a showing that an attorney's conduct is "tortious in character or beyond the scope of [the attorney's] honorable employment." *Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1080 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978) (quotation omitted).

■ CBS does not allege that Engel acted fraudulently, maliciously, tortiously or collusively, only that he openly shopped the market for a new record contract for his client. On this record, CBS was not entitled to summary judgment on the issue of whether probable cause supported the civil action filed against Engel. CBS may well have had probable cause to file an action to enjoin the conduct of Scholz, Boston, or MCA Records. *See King Records v.*

*Brown*, 21 A.D.2d 593, 252 N.Y.S.2d 988, 990–91 (1964) (record company entitled to sue vocalist and new record company to enforce terms of prior record agreement). The district court failed to distinguish, however, between the parties CBS sought to enjoin, i.e., the musicians and a record company on the one hand, and the attorney representing one of those parties on the other. Under New York law, Engel cannot be held liable for professional services rendered for his client, absent a showing of fraud, collusion or malicious or tortious conduct. There was none.

### Choice of Law

■ In his complaint for malicious prosecution, Engel alleged that CBS commenced a civil proceeding, with malice, without probable cause and that proceeding terminated in Engel's favor. The record shows that Engel has at least established triable issues with respect to these elements. If these are the only elements required, as they are under California law, Engel's claim should survive the motion for summary judgment filed by CBS.

■ We must reach the choice of law question, however, because New York imposes an additional requirement upon a plaintiff alleging malicious prosecution. New York follows the "English rule," which requires that a plaintiff alleging malicious prosecution show interference with "person or property, for example, by way of some remedy such as attachment, arrest or injunction." *Molinoff v. Sassower*, 99 A.D.2d 528, 471 N.Y.S.2d 312, 314 (N.Y.App.Div.1984).

■ Don Engel filed this action for malicious prosecution in federal court in California so we look to California choice of law principles. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (federal court sitting in diversity must apply the choice of law rules of the state in which it sits). Choice of law questions in California are subject to the "governmental interest

analysis."[1] *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 148 Cal.Rptr. 867, 869, 583 P.2d 721, 723 (1978) (In Bank). Under this approach, the forum court must "search to find the proper law to apply based upon the interests of the litigants in the involved states." *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal.Rptr. 31, 33, 432 P.2d 727, 729 (1967) (In Bank). This analysis begins with an examination of the laws of the states involved in the action in order to determine whether there is a "true conflict." *Denham v. Farmers Ins. Co.*, 213 Cal.App.3d 1061, 262 Cal.Rptr. 146, 147–48 (1989). As discussed above, in this action for malicious prosecution, the New York special injury requirement creates a true conflict.

 Where there is a "true conflict," California law, the applicable law of the forum, requires that the court conduct a "comparative impairment" analysis. *Paulo v. Bepex Corp.*, 792 F.2d 894, 895 (9th Cir.1986). The district court referred to this approach, but did not expressly analyze the respective state interests. Under the comparative impairment approach, the court examines "which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *Denham*, 262 Cal.Rptr. at 148. The balancing of impairment is slightly weighted by California's general preference for applying its own law. *Fleury v. Harper & Row Publishers Inc.*, 698 F.2d 1022, 1025 (9th Cir.), *cert. denied*, 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983).

We look first to California interests. Engel is a member of the California bar, and resides and practices law in California. The firm of Engel & Engel is headquartered in Los Angeles. Engel's efforts to secure for Boston a new record contract occurred in California, and that is where MCA and Scholz executed a record contract for the third Boston album—the album which purportedly belonged to CBS. While California does have an interest in whether the civil action filed by CBS amounted to malicious prosecution, this interest is diminished by the fact that Engel and his client availed themselves of the New York forum by agreeing that the CBS record contract would be governed by New York law.

California has an interest in protecting its citizens from malicious prosecution. If New York law were applied in this case, California's interest would be impaired to the extent that Engel would be unable to correct the wrong allegedly perpetrated upon him in the New York litigation. To some degree, California controls the quantity of vexatious litigation in California by not requiring special injury in actions for malicious prosecution. The state would certainly have an interest in applying California law if the litigation upon which the malicious prosecution claim were based had been filed in California. In a case like this, however, where another state's litigation process has allegedly been perverted, California's interest is far less than if the litigation process in California were subject to misuse.

The interests of New York, on the other hand, would be more significantly impaired if its law were not applied in this case. The prosecution complained of by Engel was instituted in New York by a New York corporation (CBS) to enforce a New York contract that expressly provided that it would be governed by New York law. Engel is a member of the New York Bar, practices law in New York, and represented Scholz in the New York action. The cause of action upon which the malicious prosecution claim is based was filed and litigated in New York. New York law restricts relief for malicious prosecution by requiring special-injury. If New York litigants can avoid this requirement, and successfully sue other New York litigants for malicious prosecution by choosing a different forum then the efficacy of New York's

---

1. The appellees urge the court to analyze this choice of law question under traditional "place of the wrong" doctrine. *See* Restatement (Second) of Conflict of Laws § 155. California, however, has broken from the traditional doctrine and weighs the interests of states and litigants to assess the degree of "comparative impairment." *See* Eugene F. Scoles & Peter Hay, *Conflict of Laws* § 17.15 (1984).

special-injury requirement will be undercut. New York seeks to control the number of malicious prosecution actions filed against New York litigants by imposing a stringent special injury requirement. If a plaintiff can circumvent this requirement by filing his or her claim in a different forum, New York's policy of limiting malicious prosecution actions, based on New York litigation, will be seriously impaired.

This analysis is consistent with other cases invoking the comparative impairment approach to a conflict of laws. In *Paulo v. Bepex Corp.*, we found that an action filed in the United States District Court for the Northern District of California, was governed by Ontario law because "Ontario's interests would be fully served if its law were applied in this case, while the interests of California would be far less significantly impaired if its law were not applied." 792 F.2d at 896. The action in *Paulo* was filed in California by a plaintiff who lived, worked, and was injured in Ontario. California law permitted a plaintiff to recover damages from a third party tortfeasor (in this case the California corporation that manufactured the injury-causing meat processor). Under Ontario law the worker could receive only workers' compensation benefits. In choosing to apply Ontario law, this court noted that Ontario had a significant interest in applying its law to both employees and employers who worked within its jurisdiction. *Id.* at 895. Similarly, in this case, New York has a significant interest in applying its law to those who litigate within its jurisdiction.

*Offshore Rental Company, Inc. v. Continental Oil Company*, probably offers the most analogous application of comparative impairment law. 22 Cal.3d 157, 148 Cal.Rptr. 867, 583 P.2d 721 (1978) (In Bank). In *Offshore Rental*, a California corporation filed an action against a Louisiana corporation to recover damages attributable to the injury of a key employee on the Louisiana corporation's business premises. *Id.*, 148 Cal.Rptr. at 869, 583 P.2d at 723. The California Supreme Court concluded that California's interest in applying its own law, permitting a corporation to recover damages for the loss of a key

employee, was not so compelling as to prevent accommodation of Louisiana's stronger and more current interest in denying a corporate employer recovery for the loss of a key employee. *Id.*, 148 Cal.Rptr. at 875, 583 P.2d at 729. The court noted that "[a]t the heart of Louisiana's denial of liability lies the vital interest in promoting freedom of investment and enterprise *within Louisiana's borders*, among investors incorporated both in Louisiana and elsewhere." *Id.*, 148 Cal.Rptr. at 874, 583 P.2d at 728. Further, the court observed that "[b]y entering Louisiana, plaintiff exposed [it]self to the risks of the territory, and should not expect to subject defendant to a financial hazard that Louisiana law had not created." *Id.* (quotation omitted, alterations in original).

Strong similarities exist between the plaintiff's position in *Offshore Rental*, and Engel's position in this malicious prosecution case. In this case, like in *Offshore Rental*, California has a general interest in protecting its citizens, and in allowing recovery for legal claims cognizable under California law, but this interest is not as compelling as New York's interest in having its malicious prosecution standards applied to cases being litigated within its boundaries. Thus, under the comparative impairment test the district court erred in ruling that California's law applied to Engel's malicious prosecution claim.

### Malicious Prosecution Claim Under New York Law

██ On September 8, 1986, the district court dismissed all of Engel's claims except his claim for malicious prosecution. The district court held that California law governed the case and that Engel's original complaint stated a valid claim for malicious prosecution under California law. Attempting to save two other claims, Engel filed an amended complaint on October 8, 1986. The district court eventually granted summary judgment for CBS because Engel did not show that CBS lacked probable cause to sue him. We explained earlier that the district court erred when it concluded that Engel did not show a lack of

probable cause. Ordinarily we would simply remand for trial.

Our reversal of the district court's choice of law ruling complicates the matter, however, because Engel's amended complaint does not allege facts meeting New York's heightened injury requirement. Recent New York appellate division decisional authority requires "[s]ome interference with plaintiff's person or property, for example, by way of some remedy such as attachment, arrest or injunction." *Molinoff v. Sassower*, 99 A.D.2d 528, 471 N.Y.S.2d 312, 314 (1984). But the appellate division does not have the final word. The New York Court of Appeals' definitive statement on malicious prosecution still seems to be *Williams v. Williams*, 23 N.Y.2d 592, 298 N.Y.S.2d 473, 246 N.E.2d 333 (1969). *See, e.g., Artzt v. Greenburger*, 161 A.D.2d 389, 555 N.Y.S.2d 127, 128 (1990). By our reading, however, *Williams* does not squarely address the elements of a malicious prosecution claim. 298 N.Y.S.2d at 475–77 & n. 2, 246 N.E.2d at 335 & n. 2; *id.*, 298 N.Y.S.2d at 482–84, 246 N.E.2d at 340 (Burke, J. concurring); *id.*, 298 N.Y.S.2d at 487–88, 246 N.E.2d at 343–44 (Fuld, C.J., dissenting in part). In a prior case, the Court of Appeals indicated that a malicious prosecution claim might lie in rare circumstances not routinely mentioned in recent appellate division cases. *See Burt v. Smith*, 181 N.Y. 1, 73 N.E. 495, 496 (1905).

Before ordering a trial, we must be sure that Engel states a valid cause of action. As it now stands, he does not. The "psychological burden of being a defendant in a law suit" does not establish injury under *Molinoff*, 471 N.Y.S.2d at 313–14. Engel argues that by including him as a defendant CBS succeeded in creating a serious conflict between himself and his client. Even presuming that such interference with an attorney-client relationship could constitute the "special injury" required under New York law, Engel has as yet pled no facts showing that he, or his client, were harmed as a result of any interference. Engel continued to represent his client in the New York breach of contract action, and secured a large recovery for his client. The preliminary injunction sought by CBS was not granted; declaratory relief was denied, and throughout the litigation Engel represented his client without significant interference. Engel has thus far failed to plead damage sufficient to show special injury under New York law.

Nevertheless, New York decisional authority suggests there may be some narrow grounds upon which a plaintiff might be able to state a valid claim for malicious prosecution without showing injury to person or property. *See Burt, supra.* Engel has never had an opportunity to plead his claim knowing that New York law applies, and we hesitate to conclude that Engel cannot allege any set of facts that would state a claim for malicious prosecution under New York law. These two factors convince us that, on remand, the district court should allow Engel to amend his complaint, if he can, to state a claim under New York law. *See Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222 (1962) (policy of liberality of amendment).

The district court's judgment is REVERSED and the case REMANDED to permit the appellant an opportunity to amend the complaint.