*22 OPINION OF THE COURT
David Goldstein, J.
The issue, one of first impression, is whether and under what circumstances, the attorney-client privilege (CPLR 4503) should yield to a criminal defendant’s constitutional right of confrontation under the Sixth Amendment, where the witness faces possible self-incrimination by such cross-examination.
The defendant stands indicted, inter alla, for the murder of his six-day-old son, Anthony Radtke. According to proof adduced at a pretrial hearing and before the Grand Jury, on August 10, 1990, defendant and his "common-law wife,” Linda Boyce, summoned the police to their apartment, located within a two-family house, to investigate a report of a missing child. Upon examining the apartment, the police found Anthony’s blood-soaked clothing, bone or skull fragments and the baby’s wrist band.
After concluding that defendant’s German Shepherd had devoured the child, x rays of the dog revealed what appeared to be human bones and an autopsy disclosed parts of the child’s body inside the animal’s stomach. Defendant was questioned and admitted to police that, in the middle of the night, he threw the child to the ground, resulting in a head injury, which, it is claimed, caused the child’s death. The People contend that, after finding that Anthony was no longer breathing, defendant dismembered the body with a razor and fed the parts to the dog.
According to Linda Boyce’s Grand Jury testimony, she was asleep during the incident, but awoke to find defendant disposing of the body. She feigned sleep by not moving for several hours, until daylight, when she awoke and pretended to have discovered, for the first time, that Anthony was missing.
As a result of this incident, a child protective proceeding was brought under the Family Court Act, wherein Boyce and defendant were jointly charged with abuse and neglect of Kaylen Radtke, the couple’s other child. Boyce was represented in that proceeding by a court-appointed attorney, Jeffrey Kaufman, whose records are now sought to be examined.
By order to show cause, defendant has applied for issuance of a subpoena duces tecum to Jeffrey Kaufman, to require him to appear at trial and to bring certain documents pertaining to his representation of Ms. Boyce, who had testified before the Grand Jury under a waiver of immunity. She is to be a key prosecution witness at this trial. Kaufman’s file allegedly *23 contains correspondence with his client and with others in connection with the Family Court proceeding, Family Court documents, and the attorney’s notes relating to that proceeding. He opposes disclosure on the grounds of attorney-client privilege, work product and the confidentiality accorded to Family Court proceedings. The People oppose the motion for essentially the same reasons.
Defendant argues that Boyce’s communications with Kaufman may contain statements inconsistent with her contemplated trial testimony and, to deny access to those alleged inconsistent statements, would be tantamount to denying his constitutional right to confront the witnesses against him. He also claims that these communications are in the nature of Rosario material (People v Rosario, 9 NY2d 286) and, further, may contain exculpatory information which must be disclosed (see, Brady v Maryland, 373 US 83).
The history of the attorney-client privilege dates back to the reign of Elizabeth I and, thus, appears to be the oldest of the confidential communication privileges (see generally, 8 Wig-more, Evidence § 2290 [McNaughton rev 1961]). In order to promote freedom of consultation between legal advisors and clients, the apprehension of compelled disclosure had to be removed. As a result, there arose a policy to prohibit such disclosure except upon the client’s consent. Although developed at common law, this privilege has now been codified by CPLR 4503, which provides: "(a) Confidential communication privileged; non-judicial proceedings. Unless the client waives the privilege, an attorney or his employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication, in any action, disciplinary trial or hearing, or administrative action, proceeding or hearing conducted by or on behalf of any state, municipal or local governmental agency or by the legislature or any committee or body thereof. Evidence of any such communication obtained by any such person, and evidence resulting therefrom, shall not be disclosed by any state, municipal or local governmental agency or by the legislature or any committee or body thereof.”
The courts in this State have formulated the elements of the privilege as follows: (1) the attorney-client relationship has to be established, i.e., one must contact an attorney in his *24 capacity as such, for the purpose of obtaining legal advice (see, People v Mitchell, 58 NY2d 368, 373; 8 Wigmore, Evidence § 2292 [McNaughton rev 1961]); (2) the information sought to be protected is a confidential communication, made to the attorney, for the purpose of obtaining legal advice or services (Matter of Jacqueline F., 47 NY2d 215, 219); (3) the burden of proving each element of the privilege rests upon the party asserting it (see, People v Osorio, 75 NY2d 80, 84; Matter of Priest v Hennessy, 51 NY2d 62, 69); and (4) even where the technical requirements of the privilege are satisfied, in a proper case, the privilege may, nonetheless, yield where there is a strong public policy which mandates disclosure (Matter of Priest v Hennessy, supra, at 69; Matter of Jacqueline F, supra). It is this last element, namely, whether there is a strong public policy so as to mandate disclosure under the facts of this case, which is at issue here.
The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to cross-examine witnesses against him (see, Douglas v Alabama, 380 US 415). In a proper case, this right of confrontation may be held to override State law and policy with respect to either privilege or confidentiality (see, Davis v Alaska, 415 US 308; People v Gissendanner, 48 NY2d 543). Any such determination may be dependent upon the specific privilege involved, since different legal privileges have different weight and importance under the law and are entitled to different degrees of protection.
In many instances, the right of confrontation may be held to be superior to a particular privilege if it is established that the information will be used on cross-examination to demonstrate bias, prejudice or some other ulterior motive on the part of the witness. Thus, in Davis v Alaska (supra), dealing with a State privilege relating to secrecy and confidentiality to be accorded juvenile records, the United States Supreme Court held that defense counsel should have been permitted to impeach a crucial witness as to any possible bias resulting from his juvenile probationary status, thereby concluding that the protection to be accorded the privilege was overshadowed by the policy and purpose which would accompany disclosure and use on cross-examination.
Likewise, in Matter of Jacqueline F. (supra), the Court of Appeals held, under the facts of that case, that an attorney may be compelled, on pain of contempt, to disclose the address of his client, the child’s aunt, who had fled with the child to Puerto Rico. The aunt had obtained legal custody of the child *25 when an application was brought to return custody to the natural parents. Recognizing that any determination as to the effect and viability of the privilege ought to be made on a case-by-case basis, the Court held that the child’s best interests, of paramount concern, required that she be returned to her natural parents. This far outweighed the confidentiality attached to any "privileged” communication, albeit emanating from the attorney-client relationship. Accordingly, counsel was directed to disclose the whereabouts of his client, which, presumably, would lead to the child as well. Any other determination would frustrate the Court’s mandate as to custody and effectively block any judicial direction to effectuate that mandate. In so ruling, the Court expressly distinguished "those situations in which a communication by a client to an attorney is made with the expectation that this information will be kept confidential for a legitimate purpose.” (Supra, 47 NY2d, at 222.)
The foregoing cases, however, are quite different from the situation in this case. What distinguishes this case from any other reported decision in this or any other State is the nature of Ms. Boyce’s contemplated testimony and the clear need to enforce the attorney-client privilege here. Inasmuch as Boyce testified before the Grand Jury under a waiver of immunity, she is still subject to possible criminal prosecution for the death and/or illegal disposal of the body, depending on what evidence is adduced in the future. To subject her to additional cross-examination in relation to statements to counsel, which she assumed would be held confidential and protected from disclosure, would unnecessarily place her in jeopardy of incriminating herself and facing possible future criminal prosecution.
Moreover, in my view, any such disclosure would undermine to the point of extinguishing the attorney-client privilege L.. the precise area where its full vitality and effect should not be disturbed. Plainly, the inspection sought by defendant would emasculate the privilege on a subject where, by its inherent nature, it was designed to apply. After all, who else would one confide in on such matters other than an attorney, who would be sought for legal advice and protection, or a priest or clergyman, for spiritual aid and comfort. To permit a defendant to invade the sanctity of the attorney-client relationship in such a case, and on so meager a showing as has been presented in the moving papers in this case, would be akin to bugging the confessional. Clearly, neither may be condoned *26 nor even tolerated under well recognized legal and moral principles which form the very foundation of our democratic society.
In those rare and infrequent cases where the attorney-client privilege was overcome by other, more significant policy considerations, the release of the client’s statement did not directly place the client in jeopardy of self-incrimination. In Matter of Jacqueline F. (supra), the judicial direction to divulge the client’s address did not place the client in fear of criminal prosecution. To the extent there was any privileged statement or communication, the Court of Appeals found that the actual purpose was to frustrate the mandate of the Court, by which custody was returned to the natural parents. Thus, the direction to disclose the whereabouts of the client, a disposition which gave effect to the best interests of the child. Clearly, disclosure of the address without the State would not subject the aunt to the possibility of self-incrimination, a situation quite distinct from that at issue in this case.
Similarly, those decisions in other jurisdictions, which permitted disclosure of privileged communications, did not involve situations where the client’s statement would subject him to criminal responsibility or otherwise place him in jeopardy. Vela v Superior Ct. (208 Cal App 3d 141, 255 Cal Rptr 921) concerned statements by certain police officers, which were (1) made after someone had been shot, (2) made to a Special Investigation Team and, (3) prepared in anticipation of defending the City in a civil action to be brought to wrongful death. The California Court of Appeal held the attorney-client privilege to be applicable to the statements. Nevertheless, notwithstanding the privilege, it held the statements to be discoverable under California law, observing that any inculpatory statements related only to the possibility of a civil suit, not to criminal responsibility. Obviously, since the officers were not charged with any criminal conduct, nor were any charges contemplated, self-incrimination was not in issue.
In State v Cascone (195 Conn 183, 487 A2d 186), the Supreme Court of Connecticut held that, under the facts of that case, statements by an accomplice to his attorney were discoverable. In doing so, the Connecticut court formulated a test applicable to disclosure of such accomplice testimony, which balanced potential damage to the attorney-client relationship from disclosure of the communication, against any benefit to be derived therefrom (supra, 487 A2d, at 190). Under this analysis, the court found that, since the accomplice had al *27 ready revealed his anticipation in the crime and had agreed to repeat his statement at trial, he waived any privilege which might attach. Moreover, since an accomplice’s testimony is usually viewed with suspicion, the ability to cross-examine as to prior statements clearly outweighed the privilege.
In our case, there is neither claim nor proof that Boyce was an accomplice. Additionally, there is no allegation that she is receiving any favorable treatment, nor that the District Attorney will forego prosecution should evidence be developed that she was actually involved in the commission of the crimes. Consequently, the need for confidentiality far outweighs the necessity for disclosure here.
As is apparent from these and other cases, the attorney-client privilege is not absolute. Review of the reported decisions leads one to the conclusion that a result-oriented analysis is appropriate. Thus, where disclosure would not put the client in jeopardy of future prosecution, the privilege may give way to other overriding policy considerations which require disclosure (see, e.g., Matter of Jacqueline F., supra). Thus, in People v Mitchell (supra, 58 NY2d, at 373), the Court recognized that the privilege "may, nonetheless, yield in a proper case, where strong public policy requires disclosure.”
On the other hand, where, as here, disclosure could lead to imposition of criminal charges, and where the communication is made with an expectation of confidentiality and for a legitimate purpose, the privilege is of paramount concern and must be enforced, notwithstanding that it may infringe upon defendant’s right of confrontation.
This same analysis applies with equal force to comparable situations where disclosure is sought of privileged communications by a defendant, in contrast to the foregoing cases, dealing with privileged communications by a witness.
Thus, in People v Wilkins (65 NY2d 172), defendant, relying upon justification as a defense, testified at trial that his wounds were inflicted by decedent, for whose murder he was being tried. In contrast, a psychologist, who had interviewed defendant after his arrest in order to ascertain whether he was suicidal, testified that defendant told him that his stab wounds were self-inflicted. Notwithstanding the discrepancy, the Court of Appeals held that defendant’s trial testimony did not amount to a waiver of the psychologist-client privilege. Accordingly, since it was error to permit the psychologist to testify as to what defendant had told him, the Court of *28 Appeals reversed the conviction and remanded the matter for a new trial. In doing so, it recognized that the psychologist-client privilege (CPLR 4507) is far broader than the physician-patient privilege (CPLR 4504) and, in terms of strength and vitality, is on a par with the privilege accorded attorney-client communications (CPLR 4503) (65 NY2d, at 178).
The clear import of the decision is that different privileged communications have varying weight in terms of legal importance and, therefore, insofar as concerns confidentiality, are entitled to varying degrees of protection. Plainly, among the strongest and most vital privileges is that accorded attorney-client communications. As was observed in another context in People v Shapiro (308 NY 453, 459): "When the client, especially one accused of crimes, asks for advice and guidance in the premises, he should be able to speak freely without any fear and in full confidence that what is said by him or to him by his attorney will not be subsequently subject to disclosure if he takes the witness stand during the trial of his case. Any other policy than strict inviolability, unless expressly waived, would seriously hamper the administration of justice, for the client would perhaps refrain from telling the truth or withhold the truth, while the lawyer would be reluctant to give the correct advice and counsel if he thought it would be subject to disclosure in the event his client took the stand to testify in his own behalf.”
In my view,, the overriding importance to be accorded the attorney-client relationship and the underlying policy considerations attached to the privilege mandate the same degree of protective treatment with respect to statements by a witness to his or her attorney as are afforded to those by a defendant. The sanctity of the relationship is the same, as is the need for confidentiality, and, in the absence of some other overriding policy consideration, both merit the protective cloak of the law.
In People v Moore (42 AD2d 268), the Appellate Division, Second Department, held in part that, when defendant took the witness stand in his own defense, although this amounted to a waiver of his constitutional and statutory protection against self-incrimination, it did not constitute a waiver of the rules concerning privileged communications between defendant and his lawyer. Thus, the Court held: "The attorney-client privilege, recognized by statute, is to be accorded a broad and liberal construction, expressing as it does, 'a longstanding public policy to encourage uninhibited communica *29 tian between persons standing in a relation of confidence and trust’ (People v. Shapiro, 308 N. Y. 453, 458; CPLR 4503).” (People v Moore, supra, 42 AD2d, at 271.)
Wilkins (supra), Moore (supra) and other reported cases (e.g., People v Glenn, 52 NY2d 880; People v Shapiro, supra) do not deal with the protection to be accorded where the attorney-client privilege conflicts with other competing policy matters. Nevertheless, the decisions do recognize a common element in all these cases — whether the client, who thought the communication would be kept private, should be compelled to disclose the statement and whether disclosure would actually place the client in jeopardy. It is this common theme of preventing self-incrimination and avoiding a breach of trust between the attorney and his client which applies in all these cases and which should be controlling in this case.
In determining when a privilege will yield to the demands of a defendant in a criminal trial, our courts have uniformly placed a heavy burden on the party requesting such information. Thus, in Matter of Covenant House/Under 21 (People— Branch) (169 AD2d 723, 724), the Appellate Division, Second Department, in reliance upon People v Gissendanner (supra, 48 NY2d, at 549-550), held: "Where confidential information is sought in a criminal action, the applicant bears a heavy burden to demonstrate need for the information. He or she must offer in good faith some 'factual predicate’ which would make it reasonably likely that the information sought would establish the unreliability of either the criminal charge or of the complaining witness.” This burden is not satisfied merely by making the assertion that disclosure of confidential matter is necessary for general impeachment purposes (see, People v Gissendanner, supra; People v Chang Gee Kim, 144 AD2d 572).
In our case, the defendant has only shown that he has a vague, unspecified hope that the communications between Boyce and Kaufman, whether oral or written, may contain something which may be useful for general impeachment purposes. This meager showing is insufficient to overcome the privilege under the facts of this case.
Plainly, under the unique facts and circumstances of this case, there is a compelling need to maintain confidentiality with respect to Boyce’s communications with her attorney, which far outweighs any claim of entitlement to discovery by defendant. This is especially so where, as here, production could place the witness in jeopardy of future prosecution.
*30 Defendant also seeks Kaufman’s files pertaining to the Family Court proceeding. However, to the extent defendant seeks copies of Family Court records, as a corespondent in that proceeding, he already has the records and, therefore, is fully aware of what transpired in the Family Court. Furthermore, in accordance with the applicable provisions in Family Court Act §§ 166 and 1047, the records of child protective proceedings are to be kept confidential. No reason is shown to breach that confidentiality, especially where, as here, defendant relies upon an unfounded and unparticularized hope that disclosure may yield material for general impeachment purposes (see, People v Gissendanner, supra). Clearly, the request for disclosure, which lacks required specificity, is a wholesale, fishing expedition and is improper.
Moreover, to the extent that the attorney’s notes do not merely record events, but also develop strategy and discuss theory, they would be immune from disclosure as attorney work product. Plainly, they are the unique product of the attorney’s knowledge, skill and training and are likely to contain his analysis, research, conclusions and strategy (see, ACWOO Intl. Steel Corp. v Frenkel & Co., 165 AD2d 752). Furthermore, any notes kept by Kaufman which do not relate to conversations with Boyce would be both irrelevant and immaterial to defendant’s ability to cross-examine her as to any prior inconsistent statements.
Finally, to the extent defendant seeks disclosure under either People v Rosario (supra), or Brady v Maryland (supra), those decisions are inapplicable to the issues on this motion. The holdings in Rosario and Brady apply only to documents or information within the possession or control of the District Attorney (see, People v Flynn, 79 NY2d 879, 882; People v Tissois, 72 NY2d 75, 78; People v Fishman, 72 NY2d 884, 886; People v Reedy, 70 NY2d 826, 827). Inasmuch as the requested materials are solely and exclusively within Kaufman’s possession, he has no duty or obligation under either Rosario or Brady to produce those documents.
Accordingly, defendant’s motion is denied in all respects.