**Donald S. ENGEL, an individual, Plaintiff,**

v.

**CBS INC., a corporation, Moses & Singer, a partnership, and Stanley Rothenberg, an individual, Defendants.**

No. 96 Civil 4946 (MGC).

United States District Court, S.D. New York.

April 24, 1997.

Engel & Engel by Donald S. Engel, Arthur J. Jacobs, New York City, for Plaintiff.

Cahill, Gordon & Reindel by Thomas J. Kavaler, Jane M. Byrne, New York City, for Defendants.

Gail I. Edwin, Litigation Counsel, Sony Music Entertainment Inc., New York City, for Defendants.

Gibson Dunn & Crutcher by Wayne W. Smith, Los Angeles, CA, for Defendants.

CEDARBAUM, District Judge.

This is an action for malicious civil prosecution. Plaintiff, a well-known music and entertainment lawyer, was himself sued by defendants while he was representing a client in a related suit brought by defendants. Plaintiff has proffered evidence that the civil action filed against him (the "underlying action") was motivated by the desire to interfere with his vigorous representation of his client. After plaintiff won a summary judgment dismissing him from the underlying action and his client won a substantial monetary award in the related suit, plaintiff filed this action for malicious prosecution.

For a malicious civil prosecution claim, New York requires all the essential elements of a claim for malicious criminal prosecution plus an additional element of "special injury," generally described in the New York cases as "interference with person or property, such as by a provisional remedy." After full discovery, defendants move for summary judgment on the ground that plaintiff will be unable to withstand a motion for a directed verdict at trial because of the absence of evidence of the essential element of "special injury."

For the reasons that follow, defendants' motion is granted.

## Undisputed Facts

In 1983, CBS filed suit against the musical group Boston and against Donald Thomas Scholz, leader of the group, for breach of contract. (Second Am. Compl. ("Compl.") ¶ 10; Defs.' Statement of Facts ("Defs.' Facts") ¶ 8.) Scholz and Boston retained Engel as their attorney and counterclaimed for breach of contract, unfair competition, breach of fiduciary obligation and tortious interference with contractual relations. (Compl. ¶ 10; Defs.' Facts ¶ 8.) On August 23, 1984, CBS filed an action in this court against Scholz, Scholz's agent Jeff Dorenfeld, MCA Records and Engel (the "underlying action"). (Compl. ¶ 15; Defs.' Facts ¶ 11–13; Pl.'s Facts ¶ 12.) The underlying action concerned the defendants' alleged participation in negotiations to deliver Boston's third album to a record company other than CBS, in violation of the contract between Scholz and CBS. (Defs.' Ex. 12.) On February 8, 1985, Judge Broderick granted a motion for summary judgment in favor of Engel in the underlying action. (Compl. ¶ 22; Defs.' Facts ¶ 16.) The judge stated that he was "so outraged by the suggestion here contained in the complaint that an attorney can be effectively immobilized from representing a client by naming him as a defendant" that he seriously considered awarding attorneys' fees to Engel. (Defs.' Ex. 13.)

In November 1985, Engel commenced this action in the Central District of California,

alleging various claims in connection with the filing of the underlying action against him. All claims but one for malicious prosecution were eventually dismissed. (Defs.' Ex. 16; Defs.' Ex. 18.) In 1991, the California district court granted defendants' motion for summary judgment on the malicious prosecution claim, reasoning that, under California law, that claim was barred as a matter of law because defendants had probable cause to institute the underlying action. (Def.Ex. 17.) On appeal, the Ninth Circuit reversed the district court's finding of probable cause and also held that New York law rather than California law governed the case. *Engel v. CBS Inc.*, 981 F.2d 1076 (9th Cir.1992). Applying New York law, the Ninth Circuit held that the complaint did not allege facts meeting New York's special injury requirement for malicious civil prosecution claims. *Id.* at 1083. It then stated:

> New York decisional authority suggests there may be some narrow grounds upon which a plaintiff might be able to state a valid claim for malicious prosecution without showing injury to person or property. Engel has never had an opportunity to plead his claim knowing that New York law applies, and we hesitate to conclude that Engel cannot allege any set of facts that would state a claim for malicious prosecution under New York law. These two factors convince us that, on remand, the district court should allow Engel to amend his complaint, if he can, to state a claim under New York law.

*Id.*

Following the Ninth Circuit's remand, Engel filed a Second Amended Complaint asserting claims of malicious prosecution and prima facie tort. (Defs.' Ex. 1; Pl.'s Ex. A.) The complaint alleges that defendants brought the underlying action "to embarrass and malign plaintiffs,[1] to punish them for representing Scholz against CBS, to dissuade them from continuing to represent Scholz zealously and vigorously, or at all, to obstruct and damage plaintiffs' business and reputation and to cause maximum financial, physical and emotional harm to plaintiffs."

---

1. Engel & Engel, the law firm of which Donald Engel is a member, was originally a co-plaintiff

in this action. It was dismissed as a plaintiff on August 2, 1993. (Defs.' Ex. 18 at 3.)

(Compl. ¶ 17.) The complaint further alleges that defendants' prosecution of the underlying action interfered with Engel's personal and property rights. (Compl. ¶ 27.)

Defendants again moved to dismiss the complaint. The California district court granted the motion to dismiss the prima facie tort claim, but denied the motion to dismiss the malicious prosecution claim. (Defs.' Ex. 18.) Following the district court's denial of the motion to dismiss, the case proceeded to discovery. On May 18, 1995, after discovery was concluded, the case was transferred to the Southern District of New York. The California district court noted in its transfer order that "a court in New York is in a considerably better position to handle this case, particularly because 'heightened injury,' a legally complex issue of New York law, is involved." (Defs.' Ex. 24 at 11.)

## Discussion

Defendants move for summary judgment on the sole ground that plaintiff cannot establish the essential element of special injury. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat a motion for summary judgment brought by the party that does not bear the burden of proof, the party with the burden of proof must make a showing sufficient to establish the existence of every element essential to that party's claim. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In deciding whether a genuine issue of material fact exists, the court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *In re Chateaugay Corporation*, 10 F.3d 944, 957 (2d Cir.1993) (citation omitted).

### 1. Malicious Prosecution

■ Under New York law, the elements of a cause of action for malicious criminal prosecution are: "(1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that ends in failure or, in other words, terminates in favor of the plaintiff." *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir.1996) (citing *Broughton v. State of New York*, 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975) (malicious prosecution based on criminal action), *cert. denied*, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975)). When a malicious prosecution claim is based on a civil action, there is an additional requirement of "special injury"; that is, the plaintiff must show "some interference with plaintiff's person or property by the use of such provisional remedies as arrest, attachment, replevin or injunction, or other burden imposed on plaintiff beyond the ordinary burden of defending a lawsuit." *Id.* (internal citations omitted); *see also Belsky v. Lowenthal*, 47 N.Y.2d 820, 821, 418 N.Y.S.2d 573, 574, 392 N.E.2d 560, 560–61 (1979) (malicious prosecution claim properly dismissed since no allegation of interference with plaintiff's person or property); *Williams v. Williams*, 23 N.Y.2d 592, 597 n. 2, 298 N.Y.S.2d 473, 477 n. 2, 246 N.E.2d 333, 335 n. 2 (1969) (action for malicious prosecution did not lie because there was no interference with plaintiff's person or property).

■ The requirement that a plaintiff show some interference with his person or property usually involves a showing of interference by a provisional remedy. Despite defendants' argument to the contrary, however, New York does not require interference by a provisional remedy. *See, e.g., Sachs v. Weinstein*, 208 A.D. 360, 203 N.Y.S. 449, 453 (1st Dep't 1924) (action for malicious prosecution does not lie "where the person or property of a defendant is not interfered with, *as by* injunction, attachment, arrest, or some other provisional remedy") (emphasis added); *Belsky v. Lowenthal*, 62 A.D.2d 319, 405 N.Y.S.2d 62, 64 (1st Dep't 1978) (malicious prosecution requires "some interference with plaintiff's person or property *such as* by use of such incidental remedies as attachment, arrest or injunction") (emphasis added) (internal citations omitted), *aff'd*, 47 N.Y.2d 820, 418 N.Y.S.2d 573, 392 N.E.2d 560 (1979).

Although some New York cases do use language suggesting that a provisional remedy is required, *see, e.g., Otiniano v. Magier,* 181 A.D.2d 438, 580 N.Y.S.2d 759, 760 (1st Dep't 1992); *Sokol v. Sofokles,* 136 A.D.2d 535, 523 N.Y.S.2d 155, 157 (2d Dep't 1988), such language is best interpreted as shorthand for the rule that interference with plaintiff's person or property is required and that such interference is usually the result of a provisional remedy. As the Second Circuit recently pointed out in *O'Brien v. Alexander,* 101 F.3d 1479, 1486 (2d Cir.1996), a provisional remedy is not the only means by which interference with person or property can be shown; a showing of some other "extraordinary burden beyond the ordinary burden of defending a civil suit" can also constitute the requisite interference.

Thus, the question in this case is whether Engel has raised a genuine issue of fact with respect to the existence of sufficient interference with person or property to meet New York's special injury requirement. It is undisputed that no provisional remedy was employed. (Defs.' Facts ¶ 21; Pl.'s Facts ¶ 23.) Engel argues that he has raised a genuine issue of material fact with respect to interference with his representation of Scholz. While Engel also argues that he has raised an issue of fact concerning loss of some business, injury to reputation and emotional distress, those proffers are insufficient as a matter of law to constitute the special injury required for a malicious civil prosecution action. *See O'Brien v. Alexander,* 101 F.3d 1479 (2d Cir.1996) (great financial harm which pushed plaintiff to point of bankruptcy is insufficient); *Molinoff v. Sassower,* 99 A.D.2d 528, 471 N.Y.S.2d 312 (2d Dep't 1984) (psychological burden of defending suit for which plaintiff had no insurance coverage for punitive damages is insufficient); *Campion Funeral Home v. State,* 166 A.D.2d 32, 569 N.Y.S.2d 518 (3d Dep't 1991) (legal expenses and injury to reputation are insufficient), *appeal denied,* 78 N.Y.2d 859, 575 N.Y.S.2d 455, 580 N.E.2d 1058 (1991). Engel has presented evidence that one purpose of CBS's suit was to interfere with Engel's representation of Scholz. Walter Yetnikoff, president of CBS when the underlying action was brought, admitted in his deposition that one

purpose for suing Engel was to dissuade him from using certain tactics in representing Scholz. (Yetnikoff Tr. at 117–18, Pl.'s Ex. B.) But the critical question is not whether CBS intended to interfere with Engel's representation of Scholz. The question is whether there was actual interference with the attorney-client relationship sufficient to constitute special injury under New York law.

Engel testified at his deposition that the underlying action "adversely affected [his] ability to represent [Scholz] fully to some extent," although he admitted that he was not ineffective. (Engel Tr. at 51.) He stated that had he thought himself to be ineffective, he would have resigned. (*Id.*) Engel also testified that the taking of discovery in the underlying action gave CBS "serious benefits" and "tremendous unfair advantages" over Scholz. (*Id.* at 44–45.) He further testified that the underlying action gave CBS the opportunity to obtain privileged information, although he did not recall disclosing any such information and in fact tried not to do so. (*Id.* at 45–46.) In addition, he stated that the underlying action created a conflict of interest between him and his client which was a "very, very difficult matter to handle." (*Id.* at 43, 52.) He also testified that his efforts were dissipated and his energies were diverted to handling his own case. (*Id.* at 47–48.) Finally, he asserted that CBS put him in a "tenuous position" with respect to Scholz because he was obligated to inform Scholz several times that it might be in his best interest to retain other counsel. (*Id.* at 48.)

Much of this testimony consists of vague assertions and general statements. Engel did testify somewhat more specifically about the interference allegedly caused when CBS deposed him. Engel stated that "every time you take a deposition in a lawsuit, you gain an advantage," and that by deposing him, CBS was able to "find[ ] out a lot of information they would not ordinarily have been able to secure." (*Id.* at 47.) A good part of the information that CBS obtained related to conversations between Engel and various third parties concerning the establishment of a new recording relationship. (*Id.* at 54–55.) Beyond that, Engel testified that he did not

remember the information that he disclosed, but did remember feeling that it was very difficult to answer the questions without disclosing his strategy in Scholz's case. (*Id.* at 56.)

Engel also testified that he had tremendous difficulty preparing papers because the things he wanted to say in his own defense were counterproductive to pending motions made by CBS against Scholz. (*Id.* at 48–49.) Engel described one example which occurred when he argued his own motion for summary judgment on the same day that CBS argued a motion to enjoin Scholz from performing. The papers in connection with those motions involved contradictory theories. After Engel prepared the papers in his own defense, he looked at them from Scholz's perspective and took out certain items that he felt might negatively influence the judge with respect to Scholz. Engel testified that this process was "not only technically difficult" but that it was "probably the hardest, most difficult, most onerous job" he had ever done. (*Id.* at 49.) He also stated that CBS had an advantage because he was "sitting up at four or five in the morning disturbed about [his own] papers" when he should have been spending that time opposing CBS's motion to enjoin Scholz. (*Id.* at 50.)

In spite of these difficulties, Engel continued to represent Scholz. (*Id.* at 43–44.) Ultimately, he achieved what he characterized as a "very, very favorable result" for Scholz, although he qualified that statement by saying, "it took God knows how many years? Seven years of litigation. Maybe it wasn't worth it. I don't know." (*Id.* at 53.) Because of this favorable result, Engel was unable to say whether he was ever forced to disclose information that damaged Scholz's case. (*Id.* at 53.) Engel testified only that the underlying action damaged Scholz in the sense that "it lessened his chances, made it more difficult to achieve that result." (*Id.* at 53.) Engel's testimony as a whole is evidence that his representation of Scholz was made more difficult by the underlying action and that part of the increased difficulty was due to a potential conflict of interest between him and his client. But the testimony also demonstrates that Engel was very successful in his representation and continued to represent his client thereafter.

No court has specified exactly what interference with person or property, other than a provisional remedy, might be sufficient to meet the special injury requirement; very few cases have found the necessary interference in the absence of a provisional remedy. One such case, cited by plaintiff, is *Groat v. Town Board of Glenville,* 73 A.D.2d 426, 426 N.Y.S.2d 339 (3d Dep't 1980), *appeal dismissed,* 50 N.Y.2d 928 (1980). In *Groat,* a police officer had been charged with various counts of misconduct in disciplinary proceedings, suspended without pay, and dismissed. The Third Department held that in that case, there was sufficient interference with person or property for the officer to bring a malicious prosecution action. *Id.* (citing *Fulton v. Ingalls,* 165 A.D. 323, 151 N.Y.S. 130 (2d Dep't 1914) (similar facts), *aff'd* 214 N.Y. 665, 108 N.E. 1094 (1915)). But the disciplinary proceedings in *Groat* were quasi-criminal in nature, whereas the underlying action in this case was clearly civil. Furthermore, the interference with the officer's person and property in *Groat* was more serious than the alleged interference with Engel. While the police officer in that case had his livelihood stripped from him, it is undisputed that Engel continued to practice law successfully throughout the pendency of the underlying action and afterward.

Plaintiff also relies on a civil court case that upheld a malicious prosecution action based on a quasi-criminal paternity proceeding. *Watson v. City of New York,* 57 Misc.2d 542, 293 N.Y.S.2d 348 (N.Y.City Civ.Ct.1968). To the extent that the action is treated as if it arose from a malicious civil prosecution, it is aberrational in that no other New York court has held that the potential consequences of an action, as opposed to the actual consequences of an action, constitute the interference with person or property required for special injury under New York law.

Engel cites two other cases which might be read as holding that special injury existed in the absence of a provisional remedy. Both are distinguishable, however. In *New England Tire & Sales Co., Inc. v. Kelly–Springfield Tire Co.,* 123 Misc. 954, 207 N.Y.S. 95

(Sup.Ct., Kings Co.1924), the underlying action appears to have been criminal. (Defs.' Ex. 25.) The case of *J.J. Theatres, Inc. v. V.R.O.K. Co.*, 96 N.Y.S.2d 271 (Sup.Ct., N.Y.Co.1950), involved the bringing of multiple baseless civil lawsuits. While the opinion is not entirely clear as to the cause of action sustained, the court appears to have upheld a *prima facie* tort claim, not a malicious prosecution claim. *See Chrysler Corp. v. Fedders Corp.*, 540 F.Supp. 706, 721–22 (S.D.N.Y. 1982) (discussing *J.J. Theatres* and *New England Tire Co.*).

The cases cited by Engel and discussed above do not provide clear support for his argument that a civil action which is brought with the malicious intent of disabling or immobilizing an attorney, and which in fact interferes with the attorney's representation of his client, is an adequate basis for a malicious civil prosecution claim. However, it is unnecessary for me to decide whether there are circumstances in which such purposeful interference can create special injury. It may be, for example, that an attorney who is disqualified from representing his client as a result of a malicious and unfounded lawsuit against both of them suffers the requisite special injury. Such a disqualification may be an interference with person or property sufficiently akin to a provisional remedy to justify a malicious civil prosecution action. But in this case, Engel was not disqualified as Scholz's attorney. In fact, Engel continued to represent Scholz effectively throughout the underlying action and the related suit, and ultimately achieved a very favorable result for his client. Under such circumstances, Engel's testimony that the defendants interfered with his representation of Scholz and created an advantage for CBS in the litigation is insufficient to support a finding of the essential element of special injury. Those facts do not rise to a level of interference with person or property that is akin to a provisional remedy as required by New York law.

2. *Prima Facie Tort*

 Engel also requests leave "to move to reconsider and reverse the dismissal of his cause of action based on *prima facie* tort."

(Pl.'s Mem. at 18 n. 9.) Under New York law, an action for *prima facie* tort cannot be used to avoid the stringent requirements of a malicious prosecution claim. *Curiano v. Suozzi*, 63 N.Y.2d 113, 118–19, 480 N.Y.S.2d 466, 470, 469 N.E.2d 1324, 1328 (1984). The dismissed *prima facie* tort claim was based on the same conduct as the malicious prosecution claim. Accordingly, Engel's request is denied.

*Conclusion*

For the foregoing reasons, defendants' motion for summary judgment on the sole remaining claim of malicious prosecution is granted, and the action is dismissed.

SO ORDERED.