**Donald S. ENGEL, Plaintiff–Appellant,**

**Engel & Engel, Plaintiff,**

**v.**

**CBS, INC., Moses & Singer, and Stanley Rothenberg, Defendants–Appellees.**

**Docket No. 97–7676.**

United States Court of Appeals, Second Circuit.

May 19, 1998.

Donald S. Engel, Engel & Engel, New York City, for Appellant.

Thomas J. Kavaler, Cahill Gordon & Reindel, New York City, for Appellee.

Present: ALTIMARI, WALKER, and CABRANES, Circuit Judges.

### ORDER

This is an appeal from a judgment of the United States District Court for the Southern District of New York (Miriam Goldman Cedarbaum, *District Judge*), concluding, inter alia, that plaintiff-appellant had not adequately alleged that defendants-appellees interfered with his person or property in a manner satisfying New York's requirement that a plaintiff in an action for malicious civil prosecution suffer special injury. In consideration of the briefs, appendix, record, and the oral argument in this appeal, it is hereby ORDERED that the Clerk of this court transmit to the Clerk of the New York Court of Appeals a certificate in the form attached, together with a complete copy of the briefs, appendix and record filed by the parties with this court. This panel retains jurisdiction so that, after we receive a response from the New York Court of Appeals, we may dispose of the appeal.

## ORDER

Certificate to the New York Court of Appeals pursuant to Second Circuit Local Rule § 0.27 and New York Court of Appeals Rule § 500.17.

In October 1983, defendant-appellee CBS, Inc. ("CBS") commenced suit in the United States District Court for the Southern District of New York (Vincent L. Broderick, *District Judge*) against members of the musical group Boston and its leader Donald Thomas Scholz ("Scholz") (the "first action"). This first action alleged breach of contract by Boston and Scholz, and sought damages of at least $20,000,000. Scholz and Boston retained plaintiff-appellee Donald S. Engel ("Engel") as their counsel and counterclaimed for breach of contract; unfair competition and violation of the Lanham Act, 15 U.S.C. § 1125(a); breach of fiduciary obligation; and tortious interference with contractual relations, demanding compensatory damages in excess of $5,000,000, punitive damages in excess of $10,000,000, and an accounting of recording royalties allegedly withheld by CBS.

By August 1984, while the first action was pending, Engel negotiated the contract between CBS's competitor, MCA, and Scholz on Scholz's behalf for the delivery of Boston's next album. On August 23, 1984, CBS filed an action in the United States District Court for the Southern District of New York (Vincent L. Broderick, *District Judge*) against Scholz, Scholz's agent Jeffrey Dorenfeld, MCA records, and Engel alleging copyright infringement and breach of contract for their roles in negotiating a contract between MCA and Scholz (the "second action"). CBS claimed that they owned the album pursuant to a contract with Boston.

On February 8, 1985, Judge Broderick granted Engel's motion for summary judgment in the second action, dismissing the suit as against Engel. Judge Broderick considered awarding attorneys' fees to Engel, stating that he was "outraged by the suggestion here contained in [CBS's] complaint that an attorney can be effectively immobilized from representing a client by naming him as defendant." Judge Broderick, however, ultimately declined to award fees. Judge Broderick also consolidated the second action against the remaining defendants with the first action. Engel continued to represent Scholz in the consolidated actions.

On November 29, 1989, then-Chief Judge of the Southern District Charles L. Brieant issued an order severing trial of the contract claims and related counterclaims from trial of the copyright claims.[1] On March 20, 1990, after a five-week trial, a jury returned a verdict in Scholz's favor on the contract claims and related counterclaims. Subsequently, both sides moved for summary judgment on the copyright claims. On July 10, 1990, Judge Brieant ruled in favor of Scholz on both motions and dismissed CBS' copyright infringement claim. Scholz recovered approximately $6,500,000 on his counterclaims. Engel characterized this victory as a "very, very favorable result."

In November 1985 Engel commenced this action in the United States District Court for the Central District of California (A. Wallace Tashima, *District Judge*) against CBS and its attorneys.[2] The complaint alleged malicious prosecution, abuse of process, intentional infliction of emotional distress and tortious interference with business relationships based on the actions of CBS and its attorneys in naming Engel as a defendant in the second action. The defendants-appellees moved to dismiss. On September 15, 1986, applying California law, the district court dismissed all of Engel's claims, except his claim for malicious prosecution. On or about February 8, 1988, the California district court stayed discovery on the remaining claim pending resolution of the first and second actions between Scholz and CBS. On November 4, 1990, after the first and second

---

1. Judge Brieant took over trial of the case after the death of Judge Broderick.

2. The law firm of Engel & Engel was previously named as a co-plaintiff in this action. On August 2, 1993, Engel & Engel was dismissed as a plaintiff because it was not a party to the prior action. In 1988, Sony Corporation acquired defendant-appellee CBS's recording division from CBS. However, CBS has remained the party of record. We refer throughout to the defendants-appellees, collectively, as "CBS."

actions as consolidated were resolved in Scholz's favor, Judge Tashima lifted the stay in this action.

CBS then moved for summary judgment in the malicious prosecution action. On March 18, 1991, Judge Tashima granted CBS's motion, reasoning that the claim was "barred as a matter of law because Defendants ... possessed probable cause to institute the" second action against Engel. The United States Court of Appeals for the Ninth Circuit reversed. *Engel v. CBS Inc.*, 981 F.2d 1076 (9th Cir.1993). The Ninth Circuit held that the district court erred in concluding that there was probable cause supporting CBS's action against Engel. *Id.* at 1079. The court also concluded that the district court erred in applying California, rather than New York, law. *Id.* at 1080–82. The court noted that unlike California, New York requires a plaintiff alleging malicious civil prosecution to show that he suffered special injury—some "interference with person or property" beyond that normally encountered in defending a lawsuit. *Id.* at 1080 (internal quotation marks omitted). Since Engel had not alleged such special injury, the Ninth Circuit remanded the case, and directed the district court to "allow Engel to amend his complaint, if he can, to state a claim under New York law." *Id.* at 1083.

On February 26, 1993, Engel filed an amended complaint in the California district court asserting claims for malicious prosecution and *prima facie* tort under New York law. The complaint alleged that CBS brought the underlying suit to embarrass and malign Engel, to punish him for representing Scholz, and to dissuade him from representing his client zealously and vigorously. Engel's complaint further alleged that by bringing the second action, CBS interfered with Engel's person and property in the following ways: (1) he lost legal fees when a client sought representation from another attorney; (2) prospective clients were dissuaded from utilizing Engel's services; (3) the services Engel rendered to Scholz were made more difficult and costly as

a result of the "conflict of interest problems inherent in the commencement of the Second Action," and Engel did not bill Scholz for these increased expenses; (4) the discovery directed at Engel in the second action interfered with Engel's representation of Scholz, creating additional costs and expenses for which Engel did not bill Scholz; and (5) Engel's reputation was damaged, causing "mental and emotional suffering and distress" as well as financial harm. His amended complaint sought over $400,000 in damages on his malicious prosecution and *prima facie* tort claims.

Once again, defendants moved to dismiss the complaint. On August 2, 1993, Judge Tashima granted the motion in part and denied it in part, dismissing the claim for *prima facie* tort but allowing the malicious prosecution claim to go forward. By order entered on May 22, 1995, after the conclusion of discovery, the California district court transferred the instant action *sua sponte* to the United States District Court for the Southern District of New York (Miriam Goldman Cedarbaum, *District Judge*) on grounds of *forum non conveniens* and improper venue.[3]

The defendants-appellees moved before Judge Cedarbaum for summary judgment on the sole ground that plaintiff could not establish the element of special injury required by New York law. The district court granted this motion. It held that, on Engel's version of the facts, the defendants-appellees' interference with Engel's representation of Scholz, Engel's loss of business, the alleged injury to Engel's reputation, and the emotional distress that Engel experienced as a result of the underlying suit are insufficient as a matter of law to meet the special injury requirement in an action for malicious civil prosecution under New York law. *See Engel v. CBS, Inc.*, 961 F.Supp. 660, 661 (S.D.N.Y. 1997).

Engel appeals to this court arguing that 1) New York law does not require a showing of

---

**3.** On September 17, 1993, the defendants-appellees moved to transfer the action to the Southern District. On November 8, 1993, Judge Tashima denied the motion. On May 3, 1995, Judge Ta-

shima reassigned the case to Judge James M. Ideman, who then reconsidered the motion *sua sponte* and transferred the action.

special injury as an element of a malicious prosecution action; and that 2) even if New York law does require a showing of special injury, he has presented sufficient evidence to raise genuine issues of fact for trial.

## DISCUSSION

■ In order to prevail in an action for malicious prosecution in New York, a plaintiff must show: "1) the initiation of an action by the defendant against [him], 2) begun with malice, 3) without probable cause to believe it can succeed, 4) that ends in failure or, in other words, terminates in favor of the plaintiff." *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir.1996) (citing *Broughton v. State of New York*, 37 N.Y.2d 451, 457, 335 N.E.2d 310, 314, 373 N.Y.S.2d 87, 94 (1975)). In addition, if the proceeding of which plaintiff complains was a civil action, the plaintiff must prove special injury—"some interference with [the] plaintiff's person or property . . . beyond the ordinary burden of defending a lawsuit." *Id.; see Campion Funeral Home, Inc. v. State*, 166 A.D.2d 32, 36–37, 569 N.Y.S.2d 518, 521 (App.Div.1991); *Belsky v. Lowenthal*, 62 A.D.2d 319, 321, 405 N.Y.S.2d 62, 64 (App.Div.1978), *aff'd*, 47 N.Y.2d 820, 392 N.E.2d 560, 418 N.Y.S.2d 573 (1979) (mem).

Engel claims that New York does not require a showing of special injury. In making this claim, he relies primarily on *Burt v. Smith*, 181.N.Y. 1, 73 N.E. 495 (1905). In *Burt*, the Court of Appeals held that "[d]amages are *rarely* recovered . . . for the malicious prosecution of a civil action, unless person or property is interfered with by some incidental remedy, such as arrest, attachment or injunction." 181 N.Y. at 5, 73 N.E. at 496 (emphasis added). Engel contends that *Burt* did not express a flat rule requiring a showing of special injury. He argues that the court's statement that damages are "rarely recovered" absent such injury opened the door to recovery absent special injury in some, albeit rare, circumstances. Engel also points to a dissenting opinion written by Chief Judge Fuld in *Williams v. Williams*, 23 N.Y.2d 592, 609, 246 N.E.2d 333, 343, 298 N.Y.S.2d 473, 488 (1969) (internal citations omitted):

Nor may such a cause of action [for malicious prosecution] be ruled out on the ground, advanced by the court, that there must be "interference with plaintiff's person or property." Although language in lower court cases may be found to such effect, the Court of Appeals has never so decided.

The problem with Engel's reliance on Chief Judge Fuld's opinion is that it is a dissent. *See Belsky*, 62 A.D.2d at 321, 405 N.Y.S.2d at 64 (expressing sympathy for Chief Judge Fuld's dissent in *Williams*, but concluding that "we are constrained to honor the majority holding of the high court"). The majority in *Williams* noted that New York adheres to the minority rule and requires a malicious civil prosecution plaintiff to demonstrate special injury. *See Williams*, 23 N.Y.2d at 596 n. 2, 246 N.E.2d at 335 n. 2, 298 N.Y.S.2d at 477 n. 2. Subsequent cases from the Court of Appeals affirm that the *Williams* majority accurately stated the current New York law of malicious prosecution. *See Curiano v. Suozzi*, 63 N.Y.2d 113, 118, 469 N.E.2d 1324, 1327, 480 N.Y.S.2d 466, 469 (1984); *Belsky v. Lowenthal*, 47 N.Y.2d 820, 392 N.E.2d 560, 418 N.Y.S.2d 573 (1979) (mem), *aff'g*, 62 A.D.2d 319, 321, 405 N.Y.S.2d 62, 64 (App.Div.1978).

Engel argues further that even if a showing of special injury is required, it is met in this case by CBS's pursuit of the second action. In most cases, special injury has been demonstrated through the use of provisional remedies, such as arrest, attachment, replevin, or injunction. *See Chrysler Corp. v. Fedders Corp.*, 540 F.Supp. 706, 720 (S.D.N.Y.1982). However, it is undisputed that no provisional remedy was imposed upon Engel here. Therefore, this case raises the threshold inquiry whether special injury may be proved in an action for malicious prosecution of a civil action without imposition of a provisional remedy.

The New York Court of Appeals has not clarified whether, and to what extent, interference with person or property, other than through provisional remedies, might satisfy the special injury requirement. Language in our cases and cases from lower courts in New York indicates that special injury may

be proven even in the absence of a provisional remedy. *See, e.g., O'Brien,* 101 F.3d at 1484 ("there [must be] a showing of some interference with plaintiff's person or property by the use of ... provisional remedies ... *or other burden* imposed on plaintiff beyond the ordinary burden of defending a law suit") (internal citations omitted, emphasis added); *Groat v. Town Bd. of Glenville,* 73 A.D.2d 426, 429–30, 426 N.Y.S.2d 339, 341 (App.Div. 1980) (plaintiff must allege "the obtaining of a provisional remedy *or other interference* with his person or property") (emphasis added); *Sachs v. Weinstein,* 208 A.D. 360, 365, 203 N.Y.S. 449, 453 (App.Div.1924) (requiring interference with person or property "*as by* attachment, arrest, or some other provisional remedy") (emphasis added); *Watson v. City of New York,* 57 Misc.2d 542, 545, 293 N.Y.S.2d 348, 353 (City Civ.Ct.1968) (requiring "interference with person or property ... *akin to those* flowing from ... the use of provisional remedies in civil actions") (emphasis added). *See also Chrysler Corp.,* 540 F.Supp. at 720–21 (noting that cases in New York and Michigan (where special injury is also required) use "nonexclusive language when describing" what constitutes special injury, so that "the interference requirement can have some flexibility"). Thus in *Groat,* the requirement was met where the malicious prosecution plaintiff was "suspended without pay, dismissed from the [police] force and, at least temporarily, disgraced in the department and in the community," as a result of the underlying civil action, even though no provisional remedy was had against the plaintiff. 73 A.D.2d at 430, 426 N.Y.S.2d at 341; *see also Fulton v. Ingalls,* 165 A.D. 323, 325–26, 151 N.Y.S. 130, 131–32 (App.Div.1914) (requirement of interference with person or property met where defendants responsible for bringing quasi-criminal charges against plaintiff police officer). In *Watson,* the plaintiff was allowed to pursue an action based on a malicious paternity proceeding. The court found that "[a]lthough neither imprisonment nor a fine is authorized" and no provisional remedy had been imposed, a paternity proceeding "does result in an order of filiation and a direction for support, with the sanction of imprisonment if support is not provided." 57 Misc.2d at 546, 293 N.Y.S.2d at 354.

On the other hand, there is language in several appellate division cases to the effect that a provisional remedy is indeed a prerequisite to an action for malicious prosecution based on a civil lawsuit. *See, e.g., Venezia v. Sirulnick,* 213 A.D.2d 629, 630, 624 N.Y.S.2d 62, 63 (App.Div.1995) ("mere service of process without further interference from some provisional remedy does not rise to the level of malicious prosecution"); *Otiniano v. Magier,* 181 A.D.2d 438, 439, 580 N.Y.S.2d 759, 760 (App.Div.1992) (no action may lie because plaintiff "was not subjected to interference from a provisional remedy"); *Sokol v. Sofokles,* 136 A.D.2d 535, 536, 523 N.Y.S.2d 155, 157 (App.Div.1988) (requiring "interference from some provisional remedy"); *Brand Mfg. Corp. v. Olit Assocs.,* 132 A.D.2d 684, 685, 518 N.Y.S.2d 161, 162 (App.Div.1987) (same); *Vevaina v. Paccione,* 125 A.D.2d 392, 393, 509 N.Y.S.2d 113, 114 (App.Div.1986) (same); *Ellman v. McCarty,* 70 A.D.2d 150, 154, 420 N.Y.S.2d 237, 241 (App.Div.1979) (same); *cf.* 59 N.Y.Jur.2d *False Imprisonment and Malicious Prosecution* §§ 48, 51, 125 (1987). However, none of these cases had occasion to directly consider whether some interference with person or property akin to, but other than, a provisional remedy, might satisfy the special injury requirement. For example, the courts in *Otiniano,* 181 A.D.2d at 439, 580 N.Y.S.2d at 760, and *Sokol,* 136 A.D.2d at 536, 523 N.Y.S.2d at 157, concluded that the underlying actions in those cases were not resolved in the plaintiffs' favor, and stated without analysis that there was also no interference with person or property in the form of a provisional remedy. The district court took the view that the language in these cases "is best interpreted as shorthand for the rule that interference with plaintiff's person or property is required and that such interference is usually the result of a provisional remedy." *Engel v. CBS Inc.,* 961 F.Supp. at 663.

The appellees maintain that the injuries alleged by Engel are insufficient as a matter of law to meet Engel's burden of demonstrating special injury—interference with his person or property beyond the ordinary burden

of defending a lawsuit. *See Molinoff v. Sassower,* 99 A.D.2d 528, 528–29, 471 N.Y.S.2d 312, 313–14 (App.Div.1984); *Campion Funeral Home,* 166 A.D.2d at 37, 569 N.Y.S.2d at 521; *Chrysler Corp.,* 540 F.Supp. at 721–23; *but see J.J. Theatres, Inc. v. V.R.O.K. Co.,* 96 N.Y.S.2d 271, 273 (Sup.Ct.1950) (harm to plaintiff's business caused by lawsuit can constitute special injury; *New England Tire & Sales Co. v. Kelly–Springfield Tire Co.,* 123 Misc. 954, 954–55, 207 N.Y.S. 95, 96 (Sup.Ct.1924) (same).

However, Engel alleges that he suffered injury beyond that ordinarily associated with defending a meritless lawsuit. He argues that the second action directly interfered with his ability to zealously and vigorously represent his client and that this interference satisfies the special injury requirement. Engel testified that the second action created a conflict of interest between him and his client Scholz, and that CBS brought the action for that purpose; that by deposing him, CBS acquired information it would not have otherwise secured, including information about Engel's trial strategy in the first action; that his defense of the second action involved theories that contradicted those advanced in the first action; and that the foregoing conflicts negatively impacted his representation of Scholz.

The district court concluded that Engel could not satisfy the special injury requirement. It relied on the fact that Engel continued to represent Scholz, that Engel's client was successful in his action against CBS, and that Engel was unable to say specifically whether he was ever forced to disclose information harmful to Scholz's position in the first action. *See Engel v. CBS, Inc.,* 961 F.Supp. at 664. The district court noted that "very few cases have found the necessary interference in the absence of a provisional remedy," *id.,* and that none of the cases cited by Engel had held that purposeful interference with an attorney's representation of his client satisfied the special injury requirement. *Id.* at 665. The court declined to decide whether such interference could ever satisfy the special injury requirement, but concluded that, because Engel was ultimately successful in the first action, his ac-

tion for malicious prosecution under New York law must fail. *Id.*

The question whether purposeful interference with an attorney's representation of a client by an adversary can satisfy the special injury requirement is unsettled in New York. In the few cases where New York's lower courts have allowed a malicious prosecution action based on a civil law suit to proceed despite the absence of a provisional remedy, the underlying action was either quasi-criminal, involving the disgrace and punishment associated with criminal proceedings, *e.g., Groat,* 73 A.D.2d at 429–30, 426 N.Y.S.2d at 341; *Watson,* 57 Misc.2d at 545–46, 293 N.Y.S.2d at 353–54, or the underlying action involved the functional equivalent of a provisional remedy, such as the impoundment of the plaintiff's property, *see Sachs,* 208 A.D. at 365, 203 N.Y.S. at 453. The present action does not fit neatly into either category.

■ The ability to zealously and vigorously represent one's client is central to the attorney's profession. The relationship between the attorney and the client is of the utmost importance, and the attorney's representation of the client ought to be protected from undue and improper interference. *Cf., e.g., People v. Radtke,* 155 Misc.2d 21, 25–26, 588 N.Y.S.2d 69, 73 (Sup.Ct.1992) (discussing "sanctity of the attorney-client relationship" as a "foundation [principle] of our democratic society"); *Ullrich v. Hearst Corp.,* 809 F.Supp. 229, 236 (S.D.N.Y.1992) (preventing employer's long-time attorney from representing employees in action against employer, because courts must "protect[ ] the confidential relationship between client and attorney; if clients withheld information from their lawyers out of fear [that subsequently the information might be used against them], the ability of the legal profession to render valuable advice to its clients would suffer"). Because the ability to zealously represent one's client with undivided loyalty is the cornerstone of the legal profession, a powerful argument can be made that interference with that ability in the manner alleged by Engel constitutes sufficient interference with person or property to meet the special injury requirement for a malicious prosecution claim in New York.

We believe the appropriate course is to certify the issue in this case to the New York Court of Appeals, since "[n]o [New York] court has specified exactly what interference with person or property, other than a provisional remedy, might be sufficient to meet the special injury requirement," 961 F.Supp. at 664, and the New York Court of Appeals has not definitively pronounced whether, absent a provisional remedy, an attorney who is sued for the purpose of interfering with his representation of his client may meet the special injury requirement. Accordingly, we certify to the New York Court of Appeals the following question:

> Whether an attorney, sued by his client's adversary for the purpose of interfering with the attorney's zealous representation of his client, and whose representation is actually undermined by the suit, may satisfy the required element of special injury in an action for malicious prosecution of a civil lawsuit under New York law where no provisional remedy is had against him.

We think this issue is appropriate for resolution by the New York Court of Appeals because of the lack of authoritative guidance on an issue with significant impact on New York tort law. A determination of this issue by the Court of Appeals will provide this and other courts with a clear standard to apply in actions for malicious prosecution under New York law.

The foregoing question is hereby certified to the Court of Appeals of the State of New York as ordered by the United States Court of Appeals for the Second Circuit.

BY THE COURT:

/s/ GEORGE LANGE III

Clerk